# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 5, 2008        Decided May 15, 2009

No. 07-3099

UNITED STATES OF AMERICA,
APPELLEE

v.

MANUEL DE JESUS VENTURA,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 04cr00288-01)

———

*Beverly G. Dyer*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A.J. Kramer*, Federal Public Defender. *Laura G. Quint*, Assistant Federal Public Defender, entered an appearance.

*Justin E. Dillon*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *Roy W. McLeese III* and *Elizabeth Trosman*, Assistant U.S. Attorneys.

Before: ROGERS, BROWN, and GRIFFITH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Appellant Manuel De Jesus Ventura challenges the sentence imposed for his crime of entering the United States after being deported for a felony conviction. Ventura argues that his prior conviction was not a "crime of violence," as the district court found, but was instead an "aggravated felony," which triggers a less severe sentencing range under the Federal Sentencing Guidelines. We agree, vacate, and remand for resentencing in light of the correct range.

**I.**

Ventura, a citizen of El Salvador, first entered the United States illegally in 1997 and was deported within a month. He returned to the United States illegally in 1999 and while here committed the crime that is at the center of this case. In 2000, the Commonwealth of Virginia charged Ventura with felonious abduction in violation of VA. CODE § 18.2-47, which prohibits unlawfully seizing or detaining another person. Ventura pleaded nolo contendere. The Virginia court found him "guilty as charged in the indictment." Tr. of Plea Colloquy at 17, *Commonwealth v. Hernandez-Chacon*, No. 98623 (Va. Cir. Ct. Dec. 18, 2000),[1] and sentenced him to eighteen months in prison. When the immigration authorities learned Ventura had reentered the country illegally, they deported him again in November 2002.

Ventura soon returned to the country and to his criminal ways. In 2004 the D.C. Superior Court sentenced him to six years in prison for, among other crimes, armed assault with

---

[1] Although the defendant in the Virginia case was named "Mario Hernandez-Chacon," and the defendant here is named "Manuel De Jesus Ventura," the parties assure us that the two are in fact the same person.

intent to commit robbery. While Ventura was serving that sentence, federal authorities realized he was once again in the country illegally. The government charged him with the crime of reentering the United States after having been deported following conviction for an aggravated felony, in violation of 8 U.S.C. § 1326(a), (b)(2).[2] The aggravated felony was the Virginia abduction. Ventura pleaded guilty.

The district court sentenced Ventura on March 7, 2005. The central dispute at sentencing was the calculation of the appropriate Guidelines range. The base offense level for the crime of unlawful reentry is 8. *See* U.S. SENTENCING GUIDELINES MANUAL (U.S.S.G.) § 2L1.2(a) (2004). The Guidelines direct the court to apply the greatest of several possible increases based on the criminal conviction that preceded the defendant's deportation. If the defendant was convicted of an "aggravated felony," the court applies an eight-level increase. *Id.* § 2L1.2(b)(1)(C). Because Ventura pleaded guilty to reentering the country after conviction for an aggravated felony, he did not contest the eight-level increase. But some aggravated felonies are also "crimes of violence," which instead trigger a sixteen-level increase under the Guidelines. *Id.* § 2L1.2(b)(1)(A)(ii). The government's presentence investigation report (PSR) concluded that Ventura's Virginia conviction was one of those crimes. Ventura disputed the PSR's conclusion, arguing that his aggravated felony conviction was not a crime of violence.

---

[2] Section 1326(a) provides that "any alien who (1) has been denied admission, excluded, deported, or removed . . . and thereafter (2) enters, attempts to enter, or is at any time found in, the United States . . . shall be fined under Title 18, or imprisoned not more than 2 years, or both." An alien "whose removal was subsequent to a conviction for commission of an aggravated felony . . . shall be fined under such Title, imprisoned not more than 20 years, or both." 18 U.S.C. § 1326(b)(2).

Reading *United States v. Booker*, 543 U.S. 220 (2005), to relieve him of the need to make a specific finding about the applicable Guidelines range, the district judge saw no need to resolve this dispute. Instead, the court weighed the various factors set out in 18 U.S.C. § 3553(a) and sentenced Ventura to 93 months' imprisonment, a sentence within the applicable Guidelines range had the court expressly found that Ventura was convicted of a crime of violence. Ventura appealed, and we reversed, explaining that under *Booker* "sentencing courts remain obligated to calculate and consider the appropriate guidelines range." *United States v. Ventura*, 481 F.3d 821, 823 (D.C. Cir. 2007). Because the district court had "expressly eschewed making a specific finding as to the guidelines range applicable to Ventura," *id.*, we remanded for it to do so. On remand, the district court concluded that the Virginia conviction was for a crime of violence and applied a sixteen-level increase to Ventura's base offense level. The resulting sentencing range was 77 to 96 months.[3] The court sentenced Ventura to 84 months' imprisonment, to be served after the six-year D.C. Superior Court sentence and to be followed by three years' supervised release. Ventura appeals.

---

[3] The district court calculated this range by starting with the base offense level of 8 for unlawful reentry. It added 16 levels for conviction of a crime of violence (bringing the level to 24) then subtracted 2 levels for acceptance of responsibility (producing a final offense level of 22). The court then looked to the PSR to determine Ventura's criminal history category. The PSR calculated eleven criminal history points based on Ventura's prior convictions, placing him in criminal history category V. The district court therefore looked to the intersection between offense level 22 and criminal history category V on the 2004 Guidelines sentencing table to find the specified range of 77 to 96 months.

## II.

The question we must decide under the Sentencing Guidelines is whether Ventura's Virginia conviction for abduction was for a crime of violence, as the district court concluded, or for an aggravated felony, as Ventura contends. If it was a crime of violence, the sixteen-level enhancement was appropriate. If not, the court should have applied the eight-level enhancement for aggravated felony convictions, and Ventura's Guidelines sentencing range would have been only 33 to 41 months.[4]

## A.

Distinguishing between the two can be a complicated task. The commentary to the sentencing guideline for unlawful reentry, which controls our interpretation, *see Stinson v. United States*, 508 U.S. 36, 38 (1993), defines "crime of violence" as

> murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use,

---

[4] Had the district court determined that Ventura's past conviction was only an aggravated felony, it would have calculated the sentencing range by starting with the same base offense level of 8. The court would then have added 8 levels for conviction of an aggravated felony and subtracted 2 levels for acceptance of responsibility, resulting in a total offense level of 14. Using the PSR's conclusion as to criminal history, the court would have looked to the intersection of offense level 14 and criminal history category V on the 2004 Guidelines sentencing table. The specified range is 33 to 41 months.

attempted use, or threatened use of physical force against the person of another.

U.S.S.G. § 2L1.2 cmt. n.1(B)(iii). A sentencing court applying this definition immediately encounters an obstacle: there is no uniformly accepted meaning of any of the listed crimes—a consequence of the federalism principles that have shaped criminal law in the United States.

The Supreme Court confronted this problem in *Taylor v. United States*, 495 U.S. 575 (1990), when it was asked to determine for sentencing purposes under the Armed Career Criminal Act, 18 U.S.C. § 924(e), whether a defendant had been convicted of a "violent felony." That statute defines "violent felony" in the same way the Guidelines define "crime of violence"—by listing qualifying crimes and elements of crimes. Among the crimes listed in the Armed Career Criminal Act is "burglary." Noting that "the criminal codes of the States define burglary in many different ways," *Taylor*, 495 U.S. at 580, the Court reasoned that Congress could not have intended the length of a sentence to turn on the definition of burglary in the state of conviction. "That would mean that a person convicted of unlawful possession of a firearm would, or would not, receive a sentence enhancement based on exactly the same conduct, depending on whether the State of his prior conviction happened to call that conduct 'burglary.'" *Id.* at 590–91. Because the statute must be uniformly applied, the Court held that the only appropriate definition of "burglary" is "the generic sense in which the term is now used in the criminal codes of most States." *Id.* at 598. Most states define "burglary" to include three common elements. Thus "a person has been convicted of burglary" in the generic sense "if he is convicted of any crime, regardless of its exact definition or label, having [these three] basic elements." *Id.* at 599.

Once it has identified the generic crime, the sentencing court must determine whether a defendant was convicted of that crime. To answer that question, the Court in *Taylor* adopted what it called a "formal categorical approach" restricted to the express language of the statute under which the defendant was convicted. *Id.* at 600. It directed the district court on remand to determine whether the statute under which the defendant was convicted required proof of the three elements of generic burglary. If so, the defendant was convicted of burglary, which is a violent felony for purposes of the Armed Career Criminal Act. But under some statutes, conviction is possible without proving each of those three elements. In those circumstances, the Court allowed that a sentencing court may modify the categorical approach by conducting a limited inquiry into the particular facts of the defendant's conviction to determine if he was nevertheless convicted of generic burglary. For example, a defendant is convicted of the generic crime if the jury instructions require a finding of all the elements of the generic crime. *See id.* at 602.

The Court later applied this "modified" categorical approach in *Shepard v. United States*, 544 U.S. 13 (2005). In that case the defendant had pleaded guilty to violating a statute that was, by its categorical terms, broader than generic burglary. The Court found it proper to look to the charging document, the plea agreement, and the transcript of the plea colloquy to determine whether the defendant "necessarily admitted" the elements of the generic offense. *Id.* at 26. These documents offer the same certainty about the conviction as the hypothetical jury instructions discussed in *Taylor*. By contrast, the Court found it improper to rely on police reports supporting the criminal complaint because the defendant had not admitted the conduct described in those reports. *Id.* at 22–

23. The reports therefore could not show that the defendant was unambiguously convicted of generic burglary.

We have used the strict categorical approach of *Taylor* and the modified categorical approach of *Shepard* to apply other sentencing statutes and guidelines that, like the Armed Career Criminal Act, define relevant terms by providing a list of crimes and elements. *See, e.g.*, *In re Sealed Case*, 548 F.3d 1085 (D.C. Cir. 2008) (applying *Taylor* to the career offender guideline's definition of "crime of violence"); *United States v. Andrews*, 479 F.3d 894 (D.C. Cir. 2007) (applying *Taylor* to the firearms offense guideline's definition of "crime of violence"). We now apply these approaches to determine whether Ventura was convicted of a crime of violence when the Virginia court accepted his plea of nolo contendere to felonious abduction.

At sentencing, the government offered two separate reasons for the court to find that Ventura's abduction conviction was for a "crime of violence" under the Guidelines. First, it argued that the Virginia statute conforms to the generic definition of "kidnapping," a listed crime under the guideline for unlawful reentry. *See* U.S.S.G. § 2L1.2. Alternatively, the government argued that Ventura's plea of nolo contendere led to a conviction of one of the guideline's listed criminal elements—namely, the use of force. The district court agreed with the government on both points, and Ventura challenges both conclusions on appeal.

If Ventura is correct that the district court should have applied the eight-level increase for aggravated felonies, rather than the sixteen-level increase for crimes of violence, we must again remand this case for resentencing because "failing to calculate (or improperly calculating) the Guidelines range" is a "significant procedural error," *Gall v. United States*, 128 S.

Ct. 586, 597 (2007); *see also United States v. Tann*, 532 F.3d 868, 874 (D.C. Cir. 2008) (appellate court must "determine whether the district court correctly calculated the Guidelines range and remand for resentencing if it did not"). Whether Virginia's abduction statute fits the generic definition of "kidnapping" is a question of law, which we review de novo. *See United States v. Hill*, 131 F.3d 1056, 1062 n.5 (D.C. Cir. 1997). By contrast, we give "due deference" to the district court's application of law to fact in deciding whether Ventura was necessarily convicted of a crime of violence as a result of his nolo plea, applying an intermediate standard between clear error and de novo review. *See Tann*, 532 F.3d at 874.

**B.**

We must first consider whether the Virginia statute under which Ventura was convicted describes the generic crime of "kidnapping" under U.S.S.G. § 2L1.2. The Virginia statute provides:

> Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction" . . . . The terms "abduction" and "kidnapping" shall be synonymous in this Code.

VA. CODE § 18.2-47(A). Although Virginia deems any violation of this statute "kidnapping," state labels do not control our inquiry under the Guidelines. *See Taylor*, 495 U.S. at 599. Rather, as *Taylor* requires, we must identify the elements of generic kidnapping and determine whether

Virginia's statute conforms to those elements or applies more broadly.

*Taylor* instructs us to determine the elements of kidnapping that are common to most states' definitions of that crime. *See id.* at 598. The parties agree that nearly every state kidnapping statute includes two common elements: (1) an act of restraining, removing, or confining another; and (2) an unlawful means of accomplishing that act. So, for example, the Virginia abduction statute applies to a person who "seizes, takes, transports, detains or secretes the person of another," VA. CODE § 18.2-47(A), if that seizure or taking is carried out "by force, intimidation or deception," *id.*

But the parties dispute whether generic kidnapping requires anything more than these two elements. The government argues that it does not. Ventura contends that a majority of states, tracking the Model Penal Code, require one of several "nefarious purposes" to distinguish kidnapping from less serious crimes, and that the generic definition should therefore include this element. *See* Br. of Appellant at 10 (citing 3 WAYNE R. LAFAVE, SUBSTANTIVE CRIMINAL LAW § 18.1(e) (2d ed. 2003)). In support of his argument, Ventura points to the Ninth Circuit's conclusion that generic kidnapping requires a nefarious purpose. *See United States v. Gonzalez-Perez*, 472 F.3d 1158, 1161 (9th Cir. 2007). The government counters with citations to two Fifth Circuit decisions rejecting this requirement. *See United States v. Iniguez-Barba*, 485 F.3d 790, 791 (5th Cir. 2007); *United States v. Gonzalez-Ramirez*, 477 F.3d 310, 318 (5th Cir. 2007).

To resolve the dispute, we look to state kidnapping statutes, the District of Columbia's statute, and the federal kidnapping provision. Many jurisdictions separate kidnapping

offenses into simple and aggravated forms or grade them as first and second degree. Because our task is to determine the meaning of "kidnapping" in any form or degree, we look to all offenses termed kidnapping by the various criminal codes.

A bare majority of jurisdictions define "kidnapping" to include a criminal purpose beyond the mere intent to restrain the victim. Twenty-two states require what Ventura terms a "nefarious purpose."[5] Some of these states list only the nefarious purposes included in the Model Penal Code: to hold the victim for ransom or reward, to use the victim as a shield or hostage, to facilitate the commission of a felony or subsequent flight, to inflict bodily injury on or terrorize the victim or another person, or to interfere with the performance of a government or political function. *See* MODEL PENAL CODE § 212.1. Other states include additional qualifying purposes, such as intent to sexually assault the victim or to hold the victim in involuntary servitude. But each requires that a defendant act with one of the specified purposes before the crime is deemed "kidnapping." In addition to these twenty-two, five other states also impose a heightened intent requirement but do not use the nefarious purpose construct.[6]

---

[5] *See* ARIZ. REV. STAT. § 13-1304(A); ARK. CODE ANN. § 5-11-102(a); DEL. CODE ANN. tit. 11, § 783; FLA. STAT. § 787.01(1); HAW. REV. STAT. § 707-720(1); IND. CODE § 35-42-3-2; IOWA CODE § 710.1; KAN. STAT. ANN. § 21-3420; KY. REV. STAT. ANN. § 509.040(1); MICH. COMP. LAWS § 750.349; MINN. STAT. § 609.25(1); MO. REV. STAT. § 565.110(1); NEB. REV. STAT. § 28-313; N.H. REV. STAT. ANN. § 633:1; N.J. REV. STAT. § 2C:13-1(a)–(b); N.M. STAT. § 30-4-1; N.C. GEN. STAT. § 14-39(a); N.D. CENT. CODE § 12.1-18-01(1); 18 PA. CONS. STAT. § 2901(a); S.D. CODIFIED LAWS §§ 22-19-1 to -1.1; VT. STAT. ANN. tit. 13, § 2405; WYO. STAT. ANN. § 6-2-201.

[6] *See* 720 ILL. COMP. STAT. 5/10-1 (requiring, at minimum, intent to confine victim secretly); MASS. GEN. LAWS ch. 265, § 26

Seventeen states require no heightened intent but include alternative aggravating conduct or circumstances that must be shown for a crime to constitute kidnapping. Seven of these states employ nearly identical formulations. Each requires that the defendant act with a nefarious purpose, hold the victim where he or she is not likely to be found, or subject the victim to a substantial risk of serious physical harm (in some states by using or threatening to use deadly force).[7] Five more states likewise require either a nefarious purpose or an alternative element of severity: in two states, substantial risk of serious physical harm;[8] in two others, carrying the victim from one place to another or taking a vulnerable victim;[9] and in one, moving the victim a substantial distance or across state lines, holding the victim for a substantial period of time, subjecting the victim to involuntary servitude or a risk of bodily injury, or taking a child without parental consent.[10] In the remaining

(requiring, at minimum, intent to confine victim secretly, to send victim outside Commonwealth, or to hold victim to involuntary servitude); OR. REV. STAT. §§ 163.225–.235 (requiring intent to interfere substantially with victim's liberty); R.I. GEN. LAWS § 11-26-1 (requiring, at minimum, intent to confine or imprison victim secretly or forcibly or to transport victim out of state); WIS. STAT. § 940.31(1) (requiring intent to cause secret confinement or imprisonment of victim, to carry victim out of state, or to hold victim to involuntary servitude).

[7] *See* ALA. CODE §§ 13A-6-40(2), -43, -44; ALASKA STAT. § 11.41.300(a)–(b); CONN. GEN. STAT. §§ 53a-91, -92, -94; ME. REV. STAT. ANN. tit. 17-A, § 301(1); N.Y. PENAL LAW §§ 135.00, .20, .25; TEX. PENAL CODE ANN. §§ 20.01(2), .03–.04; WASH. REV. CODE §§ 9A.40.010–.030.

[8] *See* OHIO REV. CODE ANN. § 2905.01; TENN. CODE ANN. §§ 39-13-303 to -305.

[9] *See* COLO. REV. STAT. §§ 18-3-301 to -302; LA. REV. STAT. ANN. §§ 14:44–:45.

[10] *See* UTAH CODE ANN. §§ 76-5-301 to -302.

five states in this category, the statutes include no nefarious purpose element, mandatory or optional, but do require an additional element of severity.[11]

Finally, six states, the District of Columbia, and the federal government define "kidnapping" to require nothing more than intentional and unlawful—that is, by force, intimidation, or deception—restraint of the victim.[12] These jurisdictions require neither heightened intent nor any aggravating conduct or circumstance. Virginia is in this category.

Our review of these kidnapping statutes leads us to conclude that a conviction under the Virginia statute is not by itself a conviction of generic kidnapping. The Virginia statute outlaws conduct far broader and less serious than the generic definition of the crime. The most common approach defines kidnapping to include a particular nefarious purpose. And the majority approach requires some kind of heightened intent beyond the mere intent to restrain the victim's liberty. Most critically, a substantial majority of jurisdictions—forty-four out of fifty-two—require some additional element of intent or severity. Virginia's abduction statute encompasses both generic kidnapping and less serious offenses, leaving it to other statutes and the discretion of sentencing judges to tailor

---

[11] *See* CAL. PENAL CODE § 207 (kidnapper must move victim from one place to another); GA. CODE ANN. § 16-5-40(a) (same); MD. CODE ANN., CRIM. LAW § 3-502 (same); MONT. CODE ANN. § 45-5-302(1) (kidnapper must hold victim in a place of isolation or use or threaten to use physical force); W. VA. CODE § 61-2-14 (victim must be a child under sixteen).

[12] *See* 18 U.S.C. § 1201(a); D.C. CODE § 22-2001; IDAHO CODE ANN. § 18-4501; MISS. CODE ANN. § 97-3-53; NEV. REV. STAT. § 200.310; OKLA. STAT. tit. 21, § 741; S.C. CODE ANN. § 16-3-910; VA. CODE § 18.2-47.

punishment based on the severity of the offense. *Compare* VA. CODE § 18.2-47(A) (providing that abduction, by default, is a Class 5 felony, punishable by one to ten years' imprisonment), *with* VA. CODE § 18.2-48 (providing that abduction with a nefarious intent is a Class 2 felony, punishable by twenty years' to life imprisonment), *and* VA. CODE § 18.2-48.1 (providing that abduction by a prisoner or escaped prisoner is a Class 3 felony, punishable by five to twenty years' imprisonment). Thus, under the strict categorical approach outlined in *Taylor*, Ventura was not convicted of the crime of kidnapping for the purpose of applying U.S.S.G. § 2L1.2.

## C.

Because a conviction for felonious abduction in Virginia does not necessarily entail conviction of all the elements of generic kidnapping, we may look beyond the statute to determine, under the modified categorical approach used in *Shepard*, whether Ventura was nonetheless convicted of a crime of violence. The district court concluded under *Shepard*'s approach that Ventura was convicted of a crime of violence by virtue of his nolo contendere plea. We disagree.

The Commonwealth of Virginia charged Ventura by an indictment that tracked the broad language of the abduction statute: "On or about the 27th day of August, 2000, in the County of Fairfax, [Ventura] did feloniously abduct [the victim] with the intent to deprive her of her personal liberty." Tr. of Plea Colloquy at 5, *Hernandez-Chacon*, No. 98623. By its terms, this charge includes nothing that would transform Ventura's conviction into one for generic kidnapping. It does not contain the same allegations as the Commonwealth's factual proffer, recited as part of the plea colloquy, which describes a crime that amounts to generic kidnapping. In the

proffer the prosecutor alleged that Ventura had approached a sixteen-year-old girl outside the supermarket where she worked. After staring at the girl and attempting to engage her in conversation, Ventura asked her to come with him. She declined. Ventura then grabbed the girl, pinned her against a wall, and put his hand between her legs. The girl kicked Ventura and broke away; he then grabbed her by the arm and pulled her into an alley. After another struggle, she broke free and returned to the supermarket to call the police. These proffered facts include two allegations that, if admitted, would mean that Ventura was convicted of generic kidnapping as that term is used by most states: removal of the victim from one place to another and intent to sexually assault, inflict bodily injury on, or terrorize the victim.

The question, then, is whether the factual proffer is within the limited set of evidence that we may look to under *Shepard*'s modified categorical approach. The government argues that it is, because by entering a nolo plea Ventura admitted the truth of this factual proffer and, therefore, the elements of generic kidnapping.[13] The government maintains that the pleading defendant admits the truth of any facts alleged by the prosecution. But this argument misconstrues the effect of a nolo plea under Virginia law. In Virginia, a defendant who pleads nolo contendere admits only the truth of the charge—that is, the crime charged in the indictment.

---

[13] The government's argument has varied throughout this case. In its sentencing memorandum, the government argued that Ventura was necessarily convicted of generic kidnapping. At the sentencing hearing, the government abandoned this theory and argued instead that Ventura was necessarily convicted of the use of force—a listed element under U.S.S.G. § 2L1.2. The distinction is ultimately unimportant: both arguments depend on whether Ventura was necessarily convicted of the proffered facts, and we conclude he was not.

*See Commonwealth v. Jackson*, 499 S.E.2d 276, 278 (Va. 1998) ("[B]y entering a plea of *nolo contendere*, the defendant 'implies a confession . . . of the truth of the charge . . . .'" (first omission in original)). Thus Ventura was necessarily convicted of any facts charged in the Virginia indictment. But that indictment charged only that Ventura abducted the victim with the intent to deprive her of personal liberty. Like the abduction statute itself, that description embraces conduct that does not amount to generic kidnapping.

Ventura's nolo plea admitted nothing about the narrower description of the crime offered by the Commonwealth at the plea colloquy. Rather, his counsel confirmed that by pleading nolo contendere Ventura signaled only that he was "not contesting the charge." Tr. of Plea Colloquy at 16, *Hernandez-Chacon*, No. 98623. And the judge found Ventura "guilty *as charged in the indictment*." *Id.* at 17 (emphasis added). At no point did Ventura, his counsel, or the judge confirm the truth of the facts as stated by the Commonwealth in its proffer. The judge was not required to accept those facts to convict Ventura. Indeed, the judge might have inferred that Ventura was pleading nolo contendere because he had violated the abduction statute but had not done all that the government alleged.

On this record, we cannot conclude that Ventura was convicted of the facts alleged in the Commonwealth's proffer. To hold otherwise would conflict with "*Taylor*'s demand for certainty when identifying a generic offense," *Shepard*, 544 U.S. at 21. "[I]f the indictment or information and jury instructions show that the defendant was charged only with [the elements of the generic crime]," the government may use the conviction as a sentencing enhancement because the jury could only convict if it found the defendant guilty of those

elements. *Taylor*, 495 U.S. at 602. And when a defendant who pleads guilty "adopt[s]" the government's factual statement, he is necessarily convicted of those facts. *Shepard*, 544 U.S. at 20. But in *Shepard* the Court refused to hold that a defendant pleading guilty is also convicted of any facts stated in a police report accompanying the criminal complaint. *See id.* at 22. It compared the report to the transcript of a jury trial showing testimony about the critical facts: neither document demonstrates with certainty that the defendant was convicted of those facts. *See id.*

Likewise, the record here does not permit us to say with the requisite certainty that Ventura was necessarily convicted of the elements of generic kidnapping—or the use of physical force. Even under the modified categorical approach, he was not convicted of a crime of violence.

## III.

Virginia's abduction statute does not conform to the generic crime of kidnapping. Under the strict categorical approach outlined in *Taylor*, Ventura's prior conviction under that statute is not a conviction of kidnapping. Furthermore, Ventura did not admit facts amounting to generic kidnapping through his plea of nolo contendere, and the judge who accepted his plea did not find him guilty of such facts. Even under the modified categorical approach of *Shepard*, he was not convicted of kidnapping or of the use of force. For these reasons, we conclude that Ventura has not been convicted of a crime of violence within the meaning of U.S.S.G. § 2L1.2. Accordingly, he was subject to an eight-level increase, rather than a sixteen-level increase, under the Federal Sentencing Guidelines. Because the district court erred in calculating the advisory sentencing range, we vacate and remand for resentencing. The district court is not required to impose the

sentence the Guidelines recommend, but it must consider that sentence before rejecting it. *See* 18 U.S.C. § 3553(a)(4).

*So ordered.*