RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0325p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

          *v.*

ALEJANDRO SOTO-SANCHEZ,
               *Defendant-Appellant.*

No. 08-3541

_____

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 07-00558-1—John R. Adams, District Judge.

Argued: July 29, 2010

Decided and Filed: October 5, 2010

Before: GIBBONS and COOK, Circuit Judges; VAN TATENHOVE, District

Judge.[*]

_____

## COUNSEL

**ARGUED:** Jaime P. Serrat, Cleveland, Ohio, for Appellant. Phillip J. Tripi, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee. **ON BRIEF:** Jaime P. Serrat, Cleveland, Ohio, for Appellant. Laura McMullen Ford, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

## OPINION
_____

VAN TATENHOVE, District Judge. Alejandro Soto-Sanchez pled guilty to illegal reentry into the United States after deportation in violation of 8 U.S.C. § 1326.

_____

[*] The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

On appeal, Soto-Sanchez challenges his sentence. He contends that the district court erred by applying a sixteen-level enhancement to his offense level under U.S.S.G. § 2L1.2 based on his prior conviction for attempted kidnapping. For the reasons set forth below, we affirm Soto-Sanchez's sentence.

I.

A single-count Indictment charged Alejandro Soto-Sanchez with illegally reentering the United States after deportation in violation of 8 U.S.C. § 1326. The Indictment noted that Soto-Sanchez had previously been removed and deported from the United States subsequent to a conviction for felony attempted kidnapping in Michigan state court in 2000. Soto-Sanchez pled guilty to the illegal reentry charge without the benefit of a plea agreement. At his rearraignment, the United States expressed its belief that Soto-Sanchez would be subject to a sixteen-level enhancement to his base offense level under the guidelines at sentencing because his prior attempted kidnapping conviction qualified as a crime of violence under U.S.S.G. § 2L1.2(b)(1)(A). Soto-Sanchez indicated his intent to object to such an enhancement. The district court ordered the parties to brief the issue prior to sentencing.

The United States Probation Office prepared a presentence investigation report ("PSR") which calculated Soto-Sanchez's base offense level at 8.[1] As expected, the PSR recommended a sixteen-level enhancement to Soto-Sanchez's offense level based on his prior Michigan state court conviction. The PSR also recommended a three-level reduction due to Soto-Sanchez's acceptance of responsibility. With a total offense level of 21 and a criminal history category III, Soto-Sanchez's sentencing guideline range was 46 to 57 months.

At sentencing, the court heard oral arguments from the parties regarding the disputed guideline enhancement. After reviewing the Michigan kidnapping statute at issue, the district court found that Soto-Sanchez had been convicted of a crime of

---

[1]The 2007 edition of the United States Guidelines Manual was used in the preparation of Soto-Sanchez's PSR.

violence within the meaning of § 2L1.2(b)(1)(A). The court further found that it could not consider the police report related to Soto-Sanchez's attempted kidnapping conviction in determining whether the offense qualified as a crime of violence. Having determined that the PSR correctly calculated his guideline range, the district court sentenced Soto-Sanchez to 46 months in prison. This appeal followed.

II.

A.

"Sentences imposed post-*Booker* are reviewed for reasonableness–including for procedural error in the calculation of the guideline range such as defendant asserts in this case." *United States v. Bartee*, 529 F.3d 357, 358 (6th Cir. 2008) (citing *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 596, 169 L.Ed.2d 445 (2007)). This Court reviews legal conclusions regarding the application of the United States Sentencing Guidelines *de novo*. *United States v. Hover*, 293 F.3d 930, 933 (6th Cir. 2002). Accordingly, this Court reviews *de novo* the question of whether Soto-Sanchez's attempted kidnapping conviction constitutes a crime of violence for the purposes of U.S.S.G. § 2L1.2. *See United States v. Garcia-Serrano*, 107 Fed. Appx. 495, 496, 2004 WL 1800869 (6th Cir. Aug. 9, 2004) (citing *United States v. Humphrey*, 279 F.3d 372, 379 (6th Cir. 2002)).

B.

United States Sentencing Guideline § 2L1.2(a) prescribes a base offense level of 8 for those convicted of unlawfully entering the United States. Section 2L1.2(b)(1)(A)(ii) then directs that this offense level be increased sixteen levels if the defendant previously was deported after conviction for a felony that is a "crime of violence." U.S.S.G. § 2L1.2(b)(1)(A)(ii). The commentary defines the term "crime of violence" for purposes of this section to mean "any of the following offenses under federal, state, or local law: Murder, manslaughter, *kidnapping*, aggravated assault . . . or any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Id.* at § 2L1.2, cmt. n. 1(B)(iii) (emphasis added). The commentary further explains that

"[p]rior convictions of offenses counted under subsection (b)(1) include the offenses of aiding and abetting, conspiring, and *attempting*, to commit such offenses." *Id.* at § 2L1.2, cmt. n. 5 (emphasis added).

On appeal, Soto-Sanchez does not dispute that he was previously deported after a Michigan conviction for attempted kidnapping. Instead, he argues that the Michigan statute under which he was convicted is broader than the generic kidnapping offense contemplated by the guidelines. Accordingly, Soto-Sanchez contends that the Court must look further into the details of his conviction to determine whether he was necessarily convicted of generic kidnapping. Soto-Sanchez specifically urges the Court to examine the police report describing the incident that gave rise to the kidnapping charge and find that he did not commit a crime of violence.

In *Taylor v. United States*, 495 U.S. 575, 579 (1990), the Supreme Court considered whether second-degree burglary under Missouri law constituted a "violent felony" for purposes of the Armed Career Criminal Act ("ACCA"), and specifically 18 U.S.C. § 924(e)(1). If so, a mandatory minimum sentence of fifteen years in prison would apply to the defendant. *See Taylor*, 495 U.S. at 578; 18 U.S.C. § 924(e)(1). The statute at issue defined "violent felony" to include any crime punishable by imprisonment for a term exceeding one year that "is burglary . . . ." *Taylor*, 495 U.S. at 578 (quoting 18 U.S.C. § 924(e)(2)(B)(ii)). The Court, however, found that "'burglary' in § 924(e) must have some uniform definition independent of the labels employed by the various States' criminal codes." *Id.* at 592. Specifically, the Court found that "Congress meant by 'burglary' the generic sense in which the term is now used in the criminal codes of most states." *Id.* at 598. The Court held that "a person has been convicted of burglary for purposes of a § 924(e) enhancement if he is convicted of any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599.

The *Taylor* Court then adopted a categorical approach for ascertaining whether a defendant is subject to an enhanced penalty under the ACCA. *Id.* at 600. Under this

approach, the sentencing court is generally required to consider only the fact of conviction and the statutory definition of the prior offense in determining whether the defendant has committed a violent felony.  *Id.* at 601.  The court may not consider the particular facts underlying the conviction.  *Id.* at 600-01.

In circumstances in which the state statute defines the crime more broadly than the generic offense, however, a modified categorical approach applies. *See United States v. De Jesus Ventura*, 565 F.3d 870, 874 (D.C. Cir. 2009).  Then, according to *Taylor*, the court may look beyond the statute and the fact of conviction to the indictment or information and jury instructions.  *Taylor*, 495 U.S. at 602.  The court must determine whether these documents show that the jury was required to find all elements of the generic offense in order to convict the defendant.  *Id.*  In other words, the court still may not consider the details of the defendant's crime.  *See id.* at 600-01.  The court may use these additional materials "only to determine *which* crime within a statute the defendant committed, not *how* he committed that crime."  *See United States v. Woods*, 576 F.3d 400, 405 (7th Cir. 2009) (emphasis in original).

The *Taylor* Court adopted the categorical approach in part to avoid "the practical difficulties and potential unfairness" of a broader factual inquiry.  *Taylor*, 495 U.S. at 601.  Of a fact-based approach, the Court asked, "Would the Government be permitted to introduce the trial transcript before the sentencing court, or if no transcript is available, present the testimony of witnesses?"  *Id.*  The Court continued, "If the sentencing court were to conclude, from its own review of the record, that the defendant actually committed a generic [offense], could the defendant challenge this conclusion as abridging his right to a jury trial?"  *Id.*  Later, in *Shepard v. United States*, 544 U.S. 13, 25 (2005), the Supreme Court expanded on this reasoning, noting that allowing a sentencing judge to consider evidence of the facts of a prior offense raises the concerns underlying *Jones v. United States*, 526 U.S. 227 (1999), and *Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Specifically, it allows the sentencing judge to "make a disputed finding of act about what the defendant and state judge must have understood as the factual basis of the prior plea . . . ."  *Shepard*, 544 U.S. at 25.  The Sixth and Fourteenth

Amendments, however, "guarantee a jury's finding of any disputed fact essential to increase the ceiling of a potential sentence." *Id.*

Since *Taylor*, this Court has employed the categorical approach in determining whether an offense constitutes a "crime of violence" under U.S.S.G. § 4B1.2, for purposes of the career offender provision, *see United States v. Arnold*, 58 F.3d 1117, 1121 (6th Cir. 1995), and in determining whether an offense constitutes a "crime of violence" for purposes of U.S.S.G. § 2L1.2, *see Garcia-Serrano*, 107 Fed. Appx. at 496.[2] Further, in *Shepard*, the Supreme Court expressly extended *Taylor*'s categorical approach to convictions following guilty pleas. 544 U.S. at 19. Accordingly, this Court will employ the categorical approach in determining whether Soto-Sanchez's conviction under Michigan's former kidnapping statute is a conviction for a crime of violence within the meaning of U.S.S.G. § 2L1.2.

The former Michigan statute on which Soto-Sanchez's attempted kidnapping conviction was based reads as follows:

> Any person who wilfully, maliciously and without lawful authority shall forcibly or secretly confine or imprison any other person within this state against his will, or shall forcibly carry or send such person out of this state, or shall forcibly seize or confine, or shall inveigle or kidnap any other person with intent to extort money or other valuable thing thereby or with intent either to cause such person to be secretly confined or imprisoned in this state against his will, or in any way held in service against his will, shall be guilty of a felony, punishable by imprisonment in the state prison for life or for any term of years.

Mich. Comp. Laws Ann. § 750.349 (1999). In light of *Taylor*, in order to determine whether this offense qualifies as a "crime of violence" within the meaning of U.S.S.G. § 2L1.2, this Court first must determine whether Michigan's former kidnapping offense "substantially corresponds" to the generic crime of kidnapping. *Taylor*, 495 U.S. at 602.

---

[2]Notably, kidnapping is not enumerated as a "violent felony" under 18 U.S.C. § 924(e)(2)(B)(ii) or a "crime of violence" under U.S.S.G. § 4B1.2(a)(2). Further, these provisions include in their definitions of violent crimes any offense that "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii); U.S.S.G. § 4B1.2(a)(2). No such clause appears in the definition of "crime of violence" for the purposes of U.S.S.G. § 2L1.2. Thus, an offense could constitute a violent crime under the ACCA or § 4B1.2, but not under § 2L1.2, or vice versa.

Soto-Sanchez argues that the generic, contemporary meaning of kidnapping is found in the Model Penal Code ("MPC").  Under the MPC,

> A person is guilty of kidnapping if he unlawfully removes another from his place of residence or business, or if he unlawfully confines another for a substantial period in a place of isolation, with any of the following purposes:
>
> a.  to hold for ransom or reward, or as a shield or hostage; or
>
> b.  to facilitate commission of any felony or flight thereafter; or
>
> c.  to inflict bodily injury on or to terrorize the victim or another; or
>
> d.  to interfere with the performance of any governmental or political function.

Model Penal Code § 212.1 (2001).  Additionally, "[a] removal or confinement is unlawful within the meaning of this Section if it is accomplished by force, threat, or deception, or, in the case of a person who is under the age of 14 or incompetent, if it is accomplished without the consent of a parent, guardian, or other person responsible for general supervision of his welfare."  *Id.*

The MPC makes it a separate, lesser crime of felonious restraint to knowingly "restrain another unlawfully in circumstances exposing him to risk of serious bodily injury" or "hold another in a condition of involuntary servitude."  Model Penal Code § 212.2 (2001).  And the MPC defines "false imprisonment" as knowingly restraining another unlawfully so as to substantially interfere with his or her liberty.  Model Penal Code § 212.3 (2001).  Thus, under the MPC, in order for a crime to constitute "kidnapping," the perpetrator must have a specific purpose other than confining his victim or removing his victim from one place to another; no such specific purpose is required for the crimes of false imprisonment or felonious restraint.

Although Soto-Sanchez lobbies the Court to adopt the MPC definition of kidnapping for the purposes of U.S.S.G. § 2L1.2, the Supreme Court in *Taylor* stated that the generic, contemporary meaning of an offense is the way the offense is defined

by the criminal codes of most states.[3] *Taylor*, 495 U.S. at 598. A survey of state statutes reveals that twenty-three states follow the MPC's approach and require a specific, "nefarious" purpose other than merely restraining the victim in order for an offense to constitute kidnapping. *See* Ariz. Rev. Stat. Ann. § 13-1304; Ark. Code Ann. § 5-11-102(a); Del. Code Ann. tit. 11, § 783; Fla. Stat. § 787.01; Haw. Rev. Stat. § 707-720(1); Ind. Code § 35-42-3-2; Iowa Code § 710.1; Kan. Stat. Ann. *§* 21-3420; Ky. Rev. Stat. Ann. § 509.040(1); La. Rev. Stat. Ann. § 14:44.1; Mich. Comp. Laws § 750.349; Minn. Stat. § 609.25; Mo. Rev. Stat. § 565.110; Neb. Rev. Stat. § 28-313; N.H. Rev. Stat. Ann. § 633:1; N.J. Stat. Ann. § 2C:13-1(a)-(b); N.M. Stat. § 30-4-1(A); N.C. Gen. Stat. § 14-39(a); N.D. Cent. Code § 12.1-18-01; 18 Pa. Stat. Ann. § 2901(a); S.D. Codified Laws § 22-19-1; Vt. Stat. Ann. tit. 13, § 2405(a); Wyo. Stat. Ann. § 6-2-201(a)-(b). *See also De Jesus Ventura*, 565 F.3d at 876-77. Notably, Michigan's current kidnapping statute is included in this list.[4] In only six states and the District of Columbia is detaining or confining the victim against his or her will enough. *See* D.C. Code § 22-2001; Idaho Code Ann. § 18-4501; Miss. Code Ann. § 97-3-53; Nev. Rev. Stat. § 200.310; Okla. Stat. tit. 21, § 741; S.C. Code Ann. § 16-3-910; Va. Code. Ann. § 18.2-47. *See also De Jesus Ventura*, 565 F.3d at 877. In the remaining states, some other aggravating factor is required, such as exposing the victim to a risk of physical injury, *see* Ohio Rev. Code Ann. § 2905.01, Tenn. Code Ann. § 39-13-303, or moving the victim from one place to another, *see* Cal. Penal Code § 207(a), Ga. Code Ann. § 16-5-40, Md. Code Ann., Crim

---

[3]The *Taylor* Court did note, however, that the generic, contemporary definition of burglary "approximates that adopted by the drafters of the Model Penal Code." *Taylor*, 495 U.S. at 598 n.8.

[4]In its brief, the United States notes that both the D.C. Circuit in *De Jesus Ventura* and the Fifth Circuit in *Gonzalez-Ramirez* list Michigan's statute among those statutes that follow the MPC's approach and require a specific purpose other than to confine or restrain, even for the least culpable means of conviction. But the D.C. Circuit and the Fifth Circuit cite the current version of Michigan's § 750.349, which reads as follows:

> (1) A person commits the crime of kidnapping if he or she knowingly restrains another person with the intent to do 1 or more of the following:
> (a) Hold that person for ransom or reward.
> (b) Use that person as a shield or hostage.
> (c) Engage in criminal sexual penetration or criminal sexual contact with that person.
> (d) Take that person outside of this state.
> (e) Hold that person in involuntary servitude.

Mich. Comp. Laws Ann. § 750.349 (2006).

Law § 3-502(a).  Additionally, thirteen states include in their definition of kidnapping secreting or holding or intending to secrete or hold the victim where he or she is not likely to be found.  *See* Idaho Code Ann. § 18-4501; Iowa Code § 710.1; 720 Ill. Comp. Stat. 5/10-1(a); Mass. Gen. Laws ch. 265, § 26; Or. Rev. Stat. § 163.225(1); R.I. Gen. Laws § 11-26-1; Ala. Code §§ 13A-6-40(2)(a), 43, & 44; Alaska Stat. § 11.41.300(a)(2)(A); Conn. Gen. Stat. § 53a-91 and 94; Me. Rev. Stat. Ann. tit. 17-A, § 301(1)(B)(2); N.Y. Penal Law §§ 135.00 & 135.20; Tex. Penal Code Ann. §§ 20.01(2)-.03; Wash. Rev. Code §§ 9A.40.010(2) & 9A.40.030(1).

After reviewing these statutes, the Court finds that the generic offense of kidnapping requires more than unlawful confinement or restraint of the victim.  The generic offense does not necessarily require, however, one of the specific purposes identified by the MPC.  Instead, the generic offense of kidnapping requires restraint plus the presence of some aggravating factor, such as circumstances that create a risk of physical harm to the victim, or movement of the victim from one place to another.  *See De Jesus Ventura*, 565 F.3d at 877-78 ("The most common approach defines kidnapping to include a particular nefarious purpose.  And the majority approach requires some kind of heightened intent beyond the mere intent to restrain the victim's liberty.  Most critically, a substantial majority of jurisdictions . . . require some additional element of intent or severity.").  *See also United States v. Moreno-Florean*, 542 F.3d 445, 454 (5th Cir. 2008) (holding that, in addition to (1) knowing removal and confinement and (2) force, threat, or fraud, the generic, contemporary offense of kidnapping requires the specified purposes identified in the MPC or "[a]dditional aggravating elements").

The Michigan statute at issue in this case criminalizes six types of conduct as kidnapping, if done wilfully, maliciously, and without lawful authority:

(1) forcibly confining or imprisoning any other person within the state against his will;

(2) secretly confining or imprisoning any other person within the state against his will;

(3) forcibly carrying or sending such person out of the state;

(4) forcibly seizing or confining, or inveigling or kidnapping any other person with intent to extort money or other valuable thing thereby;

(5) forcibly seizing or confining, or inveigling or kidnapping any other person with intent to cause such person to be secretly confined or imprisoned in the state against his will; or

(6) forcibly seizing or confining, or inveigling or kidnapping any other person with intent to cause such person to be in any way held to service against his will.

*See People v. Wesley*, 365 N.W.2d 692, 694-95 (Mich. 1984); *People v. Jaffray*, 519 N.W.2d 108, 113 (Mich. 1994). Of these six offenses deemed kidnapping by Michigan when Soto-Sanchez was convicted, five appear to fit within the generic, contemporary meaning of the offense. The second and fifth offenses require as aggravating elements that the confinement or imprisonment be "secret"[5] and that the perpetrator have an intent to secretly confine his victim respectively. As noted previously, thirteen other states include a similar aggravating element in their kidnapping statutes. The third offense includes as an aggravating element that the victim be carried or sent out of the state. The fourth offense requires that the kidnapper have an intent to extort money or something else of value; this is similar to the MPC, which finds that an offense constitutes kidnapping when the perpetrator has as his purpose holding the victim for ransom or reward. *See* Model Penal Code § 212.1 (2001). And the sixth offense requires as an aggravating factor that the kidnapper intend to cause his victim to be held to service against his will. *See Gonzalez-Ramirez*, 477 F.3d at 319 (finding that Tennessee's kidnapping was in line with the generic offense where it included as aggravating

---

[5]In *United States v. Gonzalez-Perez*, 472 F.3d 1158, 1161 (9th Cir. 2007), the Ninth Circuit held that Florida's false imprisonment statute does not constitute generic kidnapping. Notably, Florida's false imprisonment statute defines the offense as "forcibly, by threat, or *secretly* confining, abducting, imprisoning or restraining another person without lawful authority and against his or her will." *Id.* (citing Fla. Stat. § 787.02(1)(a)) (emphasis added). According to the court, the generic offense of kidnapping encompasses a "nefarious purpose motivating restriction of the victim's liberty." *Id.* (citation and internal quotation marks omitted).

Under Michigan law, however, confining another secretly is sufficiently aggravating to bring the crime within the generic definition of kidnapping. In *People v. Jaffray*, 519 N.W.2d 108, 119 (Mich. 1994), the Michigan Supreme Court explained that the essence of "secret confinement" kidnapping is "deprivation of the assistance of others by virtue of the victim's" isolation and "inability to communicate his predicament." This Court is bound by the Michigan Supreme Court's interpretation of state law, including its determination of the elements of a Michigan statute. *See Johnson v. United States*, --- U.S. ----, 130 S. Ct. 1265, 1269 (2010).

elements substantial risk of injury or *confinement as a condition of involuntary servitude*).

The first kidnapping offense under Michigan's former statute is, however, more problematic. On the face of the statute, the first offense makes forcible confinement of the victim sufficient for a charge of kidnapping. As stated previously, only six other states and the District of Columbia define this conduct as kidnapping. The MPC and several other states, including the other states in this Circuit, consider this conduct to constitute a lesser offense of false imprisonment. *See, e.g.,* Ky. Rev. Stat. Ann. § 509.020; Tenn. Code Ann. § 39-13-302; Ohio Rev. Code Ann. § 2905.03. Indeed, in *Wesley*, the Michigan Supreme Court stated that "[t]he forcible confinement section" of Michigan's former kidnapping statute, "taken by itself, describes the common-law misdemeanor offense of false imprisonment." 365 N.W.2d at 695.

The false imprisonment kidnapping offense under § 750.349, however, requires that the victim be imprisoned or confined "forcibly." By its clear terms, then, it "has as an element the use, attempted use, or threatened use of physical force against the person of another." *See* U.S.S.G. § 2L1.2 cmt. n. 1(B)(iii). In this way, it still qualifies as a crime of violence subjecting Soto-Sanchez to a sixteen-level enhancement to his offense level under the residual clause to the definition of "crime of violence" in § 2L1.2.[6] *See id.*

In sum, the six offenses punished by Michigan's former kidnapping statute either fall within the generic, contemporary meaning of kidnapping or have an element involving the use of force. Thus, under the categorical approach, the Court cannot look beyond the statute. Soto-Sanchez was necessarily convicted of a crime of violence

---

[6]Even if use of force was not one of its elements, this offense might qualify as generic kidnapping under the Michigan Supreme Court's interpretation of the statute. *See Johnson*, 130 S. Ct. at 1269. In *People v. Adams*, 205 N.W.2d 415, 422 (Mich. 1973), the Michigan Supreme Court held that, "where appropriate," asportation of the victim is a judicially required element of forcible confinement kidnapping under Michigan law. In this way, the court distinguished forcible confinement kidnapping from other, minor crimes and preserved the constitutionality of the statute. *Id.* The court further held that asportation or movement of the victim is not sufficient if it is merely incidental to the commission of an underlying lesser crime. *Id.* In *Wesley*, the court explained that asportation "incidental to a crime involving murder, extortion, or taking a hostage is sufficient for kidnapping because such conduct does not present the danger of overcharging." 365 N.W.2d at 696.

within the meaning of U.S.S.G. § 2L1.2(b)(1)(A) when he pled guilty to attempted kidnapping in Michigan state court. Accordingly, the sentencing court correctly enhanced his offense level by sixteen levels, and his 46-month sentence must be affirmed.

Even if the Court could look beyond the statute, however, we could not consider the police report arising from the incident as Soto-Sanchez requests. In *Shepard*, the Supreme Court expressly held that courts cannot examine police reports as part of the modified categorical approach. *Shepard*, 544 U.S. at 16, 21-23. Instead, courts applying the modified categorical approach to convictions following guilty pleas are limited to consideration of the "charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." *Id.* at 16.

### III.

For the foregoing reasons, we affirm Soto-Sanchez's sentence.