NOT RECOMMENDED FOR PUBLICATION
File Name: 15a0833n.06

Nos. 14-5261/14-5305/14-6317

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | Dec 30, 2015 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| TONYA JEAN JACKSON, JOSE DE LA | ) | EASTERN DISTRICT OF KENTUCKY |
| ROSA, and ROBERTO W. RODRIGUEZ, | ) | |
| aka Gerardo Perez, | ) | OPINION |
| | ) | |
| Defendants-Appellants. | ) | |

BEFORE: BATCHELDER and STRANCH, Circuit Judges; HOOD, District Judge.[*]

**JANE B. STRANCH, Circuit Judge.** In these consolidated appeals, we review the sentences imposed upon three individuals who were convicted of marijuana conspiracy in Eastern Kentucky. We AFFIRM the defendants' sentences and, as requested by the government, we remand the case of Tonya Jackson to the district court to allow her to file a motion for a reduction of sentence pursuant to recent Sentencing Guidelines Amendment 782.

## I. BACKGROUND

Roberto Rodriguez, also known as Gerardo Perez, a Mexican citizen living illegally in the United States, conducted the marijuana conspiracy from Amigos Auto 2, a legitimate automotive repair business in Nicholasville, Kentucky. From this location, Rodriguez ran a

_____

[*]The Honorable Denise Page Hood, United States District Judge for the Eastern District of Michigan, sitting by designation.

trucking company that shipped thousands of kilograms of marijuana from the Mexican border to destinations in the eastern United States. Members of a Mexican drug cartel transported the marijuana to the Texas border, where Rodriguez arranged for semi-truck drivers to pick up trailers that were loaded with marijuana and produce. The drivers transported the trailers from southern Texas to Cincinnati, Columbus, Indianapolis, and Louisville.

Rodriguez hired Jose De La Rosa, a Mexican citizen living illegally in Lexington, Kentucky, to recruit drivers for the drug trafficking organization. Rodriguez paid De La Rosa $500 for each driver recruited and $1,500 for each load of marijuana successfully delivered, for a total of approximately $13,000. De La Rosa recruited drivers William Hamlin, Jeffrey Spack, and Jeff Naylor and he also recruited Robert Werner to help him recruit other drivers. De La Rosa knew that Rodriguez paid each driver $30,000 for successfully delivering a load of marijuana.

Rodriguez employed Tonya Jackson as a clerical worker at the office of Amigos Auto 2. Jackson is a Kentucky citizen who is fluent in English and Spanish. She knew that Rodriguez's trucking company shipped loads of marijuana from Texas to other points in the United States. She participated in the conspiracy by registering the vehicles, some of them in West Virginia; by preparing bills of lading and other documentation to avoid law enforcement detection; by ensuring that each driver carried proper identification and a commercial driver's license; and by translating Spanish into English for non-Spanish speaking persons. Rodriguez paid Jackson the wage of an office worker, but she was aware that the drivers received $30,000 for each delivered load of marijuana.

Pursuant to written plea agreements with the government, Rodriguez, De La Rosa, and Jackson each pled guilty to conspiracy to distribute 1,000 kilograms or more of marijuana, in

violation of 21 U.S.C. §§ 841(a)(1) & 846. Based on the drug quantity charged, they faced a mandatory minimum term of ten years to life in prison. The district court sentenced Rodriguez to a term of 158 months of imprisonment. Because De La Rosa and Jackson qualified for the safety valve, USSG § 5C1.2, the statutory minimum sentence did not apply to them. De La Rosa received a sentence of 78 months and Jackson received a sentence of 48 months. The defendants timely filed notices of appeal. We have appellate jurisdiction under 18 U.S.C. § 3742(a).

## II.  ANALYSIS

Three issues are presented for review. De La Rosa and Jackson argue that the district court should have granted each of them a two-level reduction from the base offense level of 32 because they qualify as minor participants in the offense. Jackson contends that the court should have further reduced her base offense level under Sentencing Guidelines Amendment 782. Rodriguez challenges the extent of the court's downward departure under USSG § 5K1.1. We turn first to whether De La Rosa and Jackson were minor participants in the conspiracy.

### A.  Minor participant reduction

USSG § 3B1.2(b) provides that the district court may reduce a defendant's base offense level by two levels "[i]f the defendant was a minor participant in any criminal activity." A minor participant is one who is less culpable than most other participants, but whose role cannot be described as minimal. USSG § 3B1.2, cmt. n.5. The defendant must be substantially less culpable than the average participant in the offense to benefit from the reduction. *United States v. Lanham*, 617 F.3d 873, 888 (6th Cir. 2010) (citation and internal quotation marks omitted). A court may consider whether the defendant's "role was indispensable or critical to the success of the scheme, or if his importance in the overall scheme was such as to justify his sentence." *United States v. Skinner*, 690 F.3d 772, 783–84 (6th Cir. 2012) (quoting *United States v.*

*Salgado*, 250 F.3d 438, 458 (6th Cir. 2001)). "The salient issue is the role the defendant played in relation to the activity for which the court held him or her accountable." *United States v. Roper*, 135 F.3d 430, 434 (6th Cir. 1998).

As the proponents of the mitigating role reduction, De La Rosa and Jackson bear the burden of proving its applicability by a preponderance of the evidence. *See United States v. Roberts*, 223 F.3d 377, 379 (6th Cir. 2000). Whether we apply a *de novo*, clear error, or mixed standard of review to the question of whether the mitigating role reduction applies, we conclude that they did not meet their burden. *See id.* at 380; *United States v. Soto-Sanchez*, 623 F.3d 317, 319 (6th Cir. 2010). Because the district court did not abuse its discretion in denying each defendant a minor participant reduction, the sentences are procedurally reasonable. *See United States v. Solano-Rosales*, 781 F.3d 345, 351 (6th Cir. 2015).

De La Rosa argues that the court erred in concluding that his involvement in the conspiracy was extensive based on the payments he received from Rodriguez for recruiting drivers who successfully delivered seven or eight loads of marijuana. He characterizes his involvement as "limited" because, although he recruited drivers, Rodriguez actually hired the drivers and paid them to transport marijuana from Texas. De La Rosa points out that he did not load or unload the trucks, arrange pick-ups or deliveries, or buy and sell marijuana, and the total amount he received for his services, $13,000, was extremely small compared to the value of the marijuana transported and the financial benefits received by other members of the conspiracy. Because he did not hire the co-conspirators or make logistical decisions, he claims that his role was relatively insignificant when compared to the roles of the other co-conspirators.

Jackson admits that she knew the overall scope of the conspiracy, but she claims that Rodriguez kept her largely in the dark. She disagrees with the district court's determination that

she and her named co-defendants, Rodriguez, De La Rosa, and the drivers recruited by De La Rosa and Werner, comprised the relevant conspiracy. In her view, the conspiracy's scope was far wider and included all of the individuals located in Mexico, Texas, and midwestern cities who directed the drug trafficking organization and actually handled or transported the marijuana. She claims that the CDL drivers exploited a special skill and realized exorbitant monetary gain by participating in the conspiracy, yet she was an insignificant office clerk who was paid a commensurate wage. If her role within the larger conspiracy is examined, Jackson argues, she is not the "average participant" and she qualifies for the minor participant reduction.

The district court viewed the facts differently, finding that De La Rosa and Jackson were "average participants" in the conspiracy who carried out Rodriguez's instructions. The court characterized De La Rosa as "more of a lieutenant" to Rodriguez who was involved in the conspiracy more than a year and received significant payment for recruiting drivers, without whom the drug trafficking plan could not have succeeded. Although Jackson's plea agreement reflected the government's agreement that she qualified as a minor participant, the district court found that she "had more knowledge and understanding of the scope of the enterprise than others that had been charged in the case," and that she was "more at Mr. De La Rosa's level" than others who were charged. Jackson handled all of the paperwork for the marijuana loads, registered the vehicles, and made sure that the drivers possessed identification and a CDL license. The court observed that Jackson left the conspiracy at one point but later rejoined it, bypassing an opportunity to withdraw from her criminal conduct.

De La Rosa and Jackson did not present any evidence in support of the mitigating role reduction that might have led the district court to make different factual findings. The findings made by the court are not clearly erroneous on the record before us. We therefore conclude that

the district court did not err in denying the minor participant reduction to both defendants. *See Solano-Rosales*, 781 F.3d at 351; *Roberts*, 223 F.3d at 379. Because the court considered the defendants' arguments and explained why their requests were rejected, the court did not abuse its discretion, and the sentences imposed on De La Rosa and Jackson are not procedurally unreasonable. *See United States v. Bolds*, 511 F.3d 568, 578–81 (6th Cir. 2007).

**B. Amendment 782**

Jackson next contends that her advisory guideline range would be lower under Amendment 782 to the Sentencing Guidelines, which took effect on November 1, 2014, after she was sentenced. This amendment lowered the base offense level applicable to her offense by two levels. USSG § 2D1.1(c)(6). With a total adjusted offense level of 25 and a new advisory guideline range of 57 to 71 months, Jackson argues that she is entitled to have a lower sentence considered by the district court. At her original sentencing, her advisory guideline range was 70 to 87 months and the court varied downward to a sentence of 48 months. Starting from a lower advisory guideline range, she anticipates the court may grant a variance below 48 months.

In accordance with our precedent, the government asks us to affirm Jackson's sentence, but to remand her case to the district court for consideration of a motion to reduce sentence under 18 U.S.C. § 3582(c)(2). *See United States v. Simmons*, 587 F.3d 348, 366 (6th Cir. 2009) (observing that "the proper procedure for this court to follow is to affirm the sentence and remand if the amendment would alter the Guidelines range for this particular defendant"); *United States v. Poole*, 538 F.3d 644, 646 (6th Cir. 2008) (same). We agree that affirmance with a limited remand is the proper approach. On remand, the district court has discretion to decide, after applying the § 3553(a) factors, whether the reduction authorized by Amendment 782 is

warranted in whole or in part in Jackson's case. *See United States v. Thompson*, 714 F.3d 946, 949 (6th Cir. 2013).

## C. Extent of § 5K1.1 downward departure for Rodriguez

Finally, we turn to Rodriguez's challenge to the downward departure he received under USSG § 5K1.1 for his substantial assistance to the government. The district court set the base offense level at 34 because Rodriguez admitted that he was responsible for 3,000 to 10,000 kilograms of marijuana. The court added four levels under USSG § 3B1.1 for Rodriguez's role as an organizer or leader of the conspiracy, and deducted three levels under USSG § 3E1.1 for acceptance of responsibility to arrive at a total adjusted offense level of 35. With a criminal history category of I, the advisory guideline range was 168 to 210 months, higher than the statutory minimum sentence of 120 months.

The government filed a § 5K1.1 motion, and the court departed downward twenty-five percent from the top of the guideline range to impose a sentence of 158 months of imprisonment. Rodriguez argues that the court should have departed twenty-five percent from the bottom of the advisory guideline range.

Black-letter law forecloses Rodriguez's argument. *See United States v. Jones*, 417 F.3d 547, 550 (6th Cir. 2005); *United States v. Gregory*, 932 F.2d 1167, 1169 (6th Cir. 1991). The government can request a downward departure under § 5K1.1, but the district court retains discretion to decide whether to grant the departure and how far to depart from the advisory guideline range. *Jones*, 417 F.3d at 550. It has long been the rule that we exercise appellate jurisdiction to review a downward departure only if the district court erroneously assumed that it lacked authority to grant a departure. *Id.* We do not have jurisdiction to entertain Rodriguez's challenge to the extent of the § 5K1.1 departure he received. *Id.* (and cases cited therein).

### III. CONCLUSION

Accordingly, we AFFIRM the sentences imposed by the district court on Rodriguez, De La Rosa, and Jackson.  We REMAND Jackson's case to the district court for the limited purpose of allowing her to file a motion for a reduction of sentence under 18 U.S.C. § 3582(c)(2) in light of recent Sentencing Guidelines Amendment 782.  We express no opinion on whether a reduction under Amendment 782 is warranted.