**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 14-4249**

UNITED STATES OF AMERICA,

Plaintiff – Appellee,

v.

MARLON FLORES-GRANADOS,

Defendant – Appellant.

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Henry Coke Morgan, Jr., Senior District Judge. (2:13-cr-00120-HCM-TEM-1)

Argued: January 27, 2015               Decided: April 15, 2015

Before WILKINSON, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge King and Judge Duncan joined.

**ARGUED**: Caroline Swift Platt, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Elizabeth Marie Yusi, OFFICE OF THE UNITED STATES ATTORNEY, Norfolk, Virginia, for Appellee. **ON BRIEF**: Michael S. Nachmanoff, Federal Public Defender, Keith L. Kimball, Assistant Federal Public Defender, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Alexandria, Virginia, for Appellant. Dana J. Boente, United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Alexandria, Virginia, for Appellee.

WILKINSON, Circuit Judge:

In 2013, Marlon Flores-Granados pled guilty to a single-count indictment for illegal reentry into the United States following deportation and a conviction for an aggravated felony. See 8 U.S.C. § 1326(a), (b)(2). He now challenges his sentence, specifically the 16-level enhancement that was applied pursuant to the United States Sentencing Guidelines § 2L1.2(b)(1)(A)(ii) for prior conviction of a "crime of violence." We hold that under North Carolina law a conviction for second-degree kidnapping does constitute a crime of violence, and thus affirm Flores-Granados' sentence.

I.

Marlon Flores-Granados is a native and citizen of Honduras. On August 13, 2006 he was arrested and charged with second-degree kidnapping, assault with a deadly weapon with intent to kill or inflict serious bodily injury, and other state charges. He was convicted in February, 2007 of two counts of second-degree kidnapping in violation of North Carolina General Statute § 14-39 and sentenced to 25-39 months of confinement and probation. In March of 2007, he was removed from the United States to Honduras by the Department of Homeland Security's Immigration and Customs Enforcement.

Flores-Granados reentered the United States illegally at some point prior to August 5, 2013, when he was arrested for

2

possession of a controlled substance and assault and battery in Virginia Beach, VA. He was charged in the Eastern District of Virginia with Reentry of a Deported Alien in violation of 8 U.S.C. § 1326(a) and (b)(2) to which he pled guilty.

Flores-Granados' presentence investigation report initially recommended an 8-level enhancement for a previous conviction for an aggravated felony under U.S.S.G. § 2L1.2(b)(1)(C). Following an objection by the government, the probation office agreed that Flores-Granados' prior conviction for second-degree kidnapping in North Carolina qualified as a prior conviction for a 'crime of violence' under U.S.S.G. § 2L1.2(b)(1)(A)(ii) and thus a 16-level enhancement should be applied instead. With the additional enhancement, Flores-Granados had an Offense Level Total of 21 and a Criminal History Category of IV generating a recommended Guidelines Range of 57-71 months.

At the sentencing hearing, the district court adopted the presentence investigation report, noting that the defendant objected to the 16-level enhancement, and wanted only the 8-level enhancement instead. After argument from both parties, the district judge agreed with the government that the 16-level enhancement was proper, finding that defendant's conviction under § 14-39 for second-degree kidnapping was in fact a crime of violence under the Guidelines. The court stated that:

> [T]he Court should not simply accept the 16-point enhancement based upon the title of the prior conviction. However, in this case the record reflects that he threatened the victim with having a gun, broke into her apartment in the middle of the night while she was asleep, told her he had a gun, and then stabbed her with a screwdriver, and I think that qualifies as the type of violent conduct which justifies the 16-point enhancement. The Court is not relying simply on the fact that he was convicted of second-degree kidnapping, but those facts suggest the violence of his conduct in the course of the kidnapping. He also has a number of other convictions for violent conduct, mostly against the same person. But, again, he became involved in violent conduct very recently.

J.A. 68-69. After considering the Guidelines calculations and the sentencing factors laid out in 18 U.S.C. § 3553(a), the district court sentenced Flores-Granados to 57 months imprisonment. This appeal followed.

## II.

### A.

Under the U.S. Sentencing Guidelines, a defendant who "previously was deported" after a conviction for a "crime of violence" and unlawfully returned to the United States is subject to an enhancement of either 12 or 16 levels depending on whether the conviction receives criminal history points. U.S.S.G. § 2L1.2(b)(1)(A)(ii). The application notes define a crime of violence as any of a list of enumerated offenses, including "kidnapping," or "any other offense . . . that has as an element the use, attempted use, or threatened use of physical

4

force against the person of another." U.S.S.G. § 2L1.2 Application Notes 1(B)(iii). Flores-Granados contends on appeal that the district court erred in finding his prior conviction in North Carolina qualified as a crime of violence within the meaning of § 2L1.2 of the Guidelines. Whether a prior conviction should be considered a crime of violence is a question of law and we review the district court's determination de novo. See, e.g., United States v. Jenkins, 631 F.3d 680, 682 (4th Cir. 2011).

Even though the Supreme Court in Taylor v. United States, 495 U.S. 575 (1990), focused on whether a conviction qualified as a "violent felony" under the Armed Career Criminal Act (ACCA) we "apply its analysis to the 'crime of violence' definition [under U.S.S.G. § 2L1.2(b)(1)(A)(ii)] as well." United States v. Bonilla, 687 F.3d 188, 190 n.3 (4th Cir. 2012); see also United States v. King, 673 F.3d 274, 279 n.3 (4th Cir. 2012). We "rely on precedents evaluating whether an offense constitutes a 'crime of violence' under the Guidelines interchangeably with precedents evaluating whether an offense constitutes a 'violent felony' under the ACCA because the two terms have been defined in a manner that is 'substantively identical.'" King, 673 F.3d at 279 n.3 (quoting United States v. Jarmon, 596 F.3d 228, 231 n.* (4th Cir. 2010)).

5

When considering whether a predicate state crime constitutes a "crime of violence," we examine the elements of the offense using the categorical approach laid out in Taylor. See 495 U.S. at 598-602; Descamps v. United States, 133 S. Ct. 2276, 2281 (2013). In Taylor, the Supreme Court found that with regard to prior crimes enumerated in a sentencing enhancement statute, Congress intended to refer to "the generic, contemporary meaning" of the crime. Taylor, 495 U.S. at 598. Such meaning, the Court explained, can be divined from "the generic sense in which the term is now used in the criminal codes of most States." Id.

We begin with the fact that kidnapping is an enumerated offense included by the Sentencing Commission in the definition of "crime of violence." Thus, if we find that the North Carolina statute falls within the generic definition of kidnapping, we need not look to the residual clause as to whether "use of force" is an element of the crime. See U.S.S.G. § 2L1.2(b)(1)(A)(ii) Application Notes 1(B)(iii). The label of kidnapping used by North Carolina with regard to Flores-Granados' prior conviction is only the start of the inquiry.

Under the categorical approach, the court must identify the generic contemporary meaning of the enumerated crime. See United States v. Perez-Perez, 737 F.3d 950, 952 (4th Cir. 2013). We then compare that definition to the state statute under which

6

defendant was previously convicted. Id. If the defendant was previously convicted "in a State where the generic definition has been adopted" or where the "state statute is narrower than the generic view" then "there is no problem" because in both cases "the conviction necessarily implies that the defendant has been found guilty of all the elements of [the] generic [crime]." Taylor, 495 U.S. at 599. However, if the state statute "criminalize[s] a broader scope of conduct than the Guideline crime [then it] is not categorically a crime of violence." Perez-Perez, 737 F.3d at 953.

B.

Under the categorical approach, "the sentencing court . . . must look only to the statutory definitions of the prior offenses" and may not look "to the particular facts underlying those convictions." Taylor, 495 U.S. at 600; see also Begay v. United States, 553 U.S. 137, 141 (2008). A modified categorical approach may be used in cases where the state statute under which the defendant was previously convicted "sets out one or more elements of the offense in the alternative," but not where the statute is "indivisible." Descamps, 133 S. Ct. at 2281. Moreover, even under the modified categorical approach, the later court is "generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by

7

the trial judge to which the defendant assented." <u>Shepard v. United States</u>, 544 U.S. 13, 16 (2005). The judge may not consider "police reports or complaint applications." <u>Id.</u>

The district court thus erred in referencing the facts of Flores-Granados' prior kidnapping conviction. <u>See</u> J.A. 68-69 ("[H]e . . . broke into her apartment in the middle of the night while she was asleep, told her he had a gun, and then stabbed her with a screwdriver, and I think that qualifies as the type of violent conduct which justifies the 16-point enhancement."). Although the statute's elements are divisible, there are no <u>Shepard</u>-approved documents present in the record. A police report, untested and unproven, is not a legitimate source of factual information for courts to rely on even under the modified categorical approach of <u>Taylor</u> and <u>Shepard</u>. <u>See</u> <u>Taylor</u>, 495 U.S. at 602; <u>Shepard</u>, 544 U.S. at 16, 26. Here the court was limited to the categorical approach: whether the elements of the statute render it categorically a crime of violence. <u>Taylor</u>, 495 U.S. at 599.

### III.

The trial court's error does not, however, resolve the appeal. We are "entitled to affirm on any ground appearing in the record, including theories not relied upon or rejected by the district court." <u>Scott v. United States</u>, 328 F.3d 132, 137 (4th Cir. 2003). The government contends that although the

8

district court did commit error in relying on facts from the police report, the 16-level enhancement was proper nonetheless. We agree that under the categorical approach, Flores-Granados' kidnapping conviction qualifies as a crime of violence.

As noted, the categorical approach requires us to compare the North Carolina statute under which Flores-Granados was convicted with the "generic, contemporary meaning" of the enumerated crime, here kidnapping. Taylor, 495 U.S. at 598.

A.

The North Carolina statute provides in relevant part:

(a) Any person who shall unlawfully confine, restrain, or remove from one place to another, any other person 16 years of age or over without consent of such person, or any other person under the age of 16 years without the consent of a parent or legal custodian of such person, shall be guilty of kidnapping if such confinement, restraint or removal is for the purpose of:

(1) Holding such other person for a ransom or as a hostage or using such other person as a shield; or
(2) Facilitating the commission of any felony or facilitating flight of any person following the commission of a felony; or
(3) Doing serious bodily harm to or terrorizing the person so confined, restrained or removed or any other person; or
(4) Holding such other person in involuntary servitude in violation of [N.C. Gen. Stat.] 14-43.12 . . .[1]

---

[1] We consider the statute as it was enacted at the time of Flores-Granados' conviction. Subsequent to his conviction, North Carolina amended the statute to include two additional purposes regarding holding persons in sexual servitude and trafficking of
(Continued)

(b) There shall be two degrees of kidnapping as defined by subsection (a). If the person kidnapped either was not released by the defendant in a safe place or had been seriously injured or sexually assaulted, the offense is kidnapping in the first degree . . . If the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted, the offense is kidnapping in the second degree.

N.C. GEN. STAT. § 14-39(a)-(b).

Because the government offers no Shepard-approved documents, the court must assume that the prior conviction was based on the least serious of the acts covered by the state statute. See Johnson v. United States, 559 U.S. 133, 137 (2010). As explained by the Supreme Court of North Carolina, under N.C. Gen. Stat. § 14-39, "kidnapping can be just as effectively accomplished by fraudulent means as by the use of force, threats, or intimidation." State v. Sturdivant, 283 S.E.2d 719, 729 (N.C. 1981).

Where "the statutory definition of the prior offense has been interpreted by the state's highest court, that interpretation constrains our analysis of the elements of state law." United States v. Aparicio-Soria, 740 F.3d 152, 154 (4th Cir. 2014) (en banc) (citing Johnson, 559 U.S. at 138). The

persons with the intent to hold such persons in involuntary or sexual servitude. In any event, because they merely add possible specific purposes in the alternative, the analysis before this court is unaltered. See N.C. GEN. STAT. § 14-39(a)(5)-(6).

10

North Carolina Supreme Court has found that the "essence of any kidnapping offense is the unlawful confinement, restraint or removal of a human being for a certain proscribed purpose." Sturdivant, 283 S.E.2d at 728. Under state law, the "difference between kidnapping and the lesser included offense of false imprisonment is the purpose of the confinement, restraint, or removal of another person." State v. Pigott, 415 S.E.2d 555, 562 (N.C. 1992).

The North Carolina Supreme Court has "specifically rejected the notion that 'confinement' or 'restraint', as used in [§ 14-39], means confinement or restraint 'for a substantial period' and that 'removal,' as used in [§ 14-39], requires a movement 'for a substantial distance.'" State v. Surrett, 427 S.E.2d 124, 127 (N.C. Ct. App. 1993) (internal quotations and citations omitted) (quoting State v. Fulcher, 243 S.E.2d 338, 351 (N.C. 1978)). In "determining whether the crime of kidnapping has been committed," the Supreme Court explained, "it was clearly the intent of the Legislature to make resort to a tape measure or a stop watch unnecessary." Fulcher, 243 S.E.2d at 351.

Given these constraints, Flores-Granados argues that North Carolina's statute sweeps more broadly than the generic definition of kidnapping because it can be accomplished by fraud or trickery alone and it does not include as an element "substantial interference with the victim's liberty" or

11

"circumstances exposing the victim to substantial risk of bodily injury or confinement as a condition of involuntary servitude." Appellant's Reply Br. at 5-6 (quoting United States v. Najera-Mendoza, 683 F.3d 627, 630 (5th Cir. 2012)). We agree that there is a danger in defining crimes of violence so broadly that they improperly sweep in convictions for prior nonviolent conduct. Here, however, the North Carolina statute is well within the generic definition of kidnapping and is thus a crime of violence.

B.

The elements necessary to the generic definition of kidnapping present a question of first impression for this circuit. There is "no uniformly accepted meaning of any of the listed crimes [as] a consequence of the federalism principles that have shaped criminal law in the United States." United States v. De Jesus Ventura, 565 F.3d 870, 874 (D.C. Cir. 2009). Nearly every state kidnapping statute and the Model Penal Code (MPC) includes a requirement of restraint or confinement of the victim and the employment of unlawful means, often defined as "by force, threat or deception, or in the case of [a minor or incompetent individual] without the consent of a parent [or] guardian." MODEL PENAL CODE § 212.1; see also De Jesus Ventura, 565 F.3d at 876 (noting that pursuant to 50-state survey the generic definition of kidnapping must include "(1) an act of

12

restraining, removing, or confining another; and (2) an unlawful means of accomplishing that act"). Any generic definition must include these two elements. The parties here dispute, however, which additional aggravating factors, if any, are required beyond this baseline definition.

To determine which aggravating elements must be included for a statute to fall within "the generic sense in which the term [kidnapping] is now used in the criminal codes of most States," we draw upon commonalities amongst the MPC, the laws of the states, as well as the examples of our sister circuits. Taylor, 495 U.S. at 598.

C.

For the following reasons, we think it is plain that some additional element of severity is necessary to distinguish kidnapping from its lesser-included offenses. In considering the statutes of the fifty states and the District of Columbia as well as the Model Penal Code, we conclude that the best characterization of generic kidnapping is (1) unlawful restraint or confinement of the victim, (2) by force, threat or deception, or in the case of a minor or incompetent individual without the consent of a parent or guardian, (3) either for a specific nefarious purpose or with a similar element of heightened intent, or (4) in a manner that constitutes a substantial interference with the victim's liberty. Here, because the North

13

Carolina statute requires a specific nefarious purpose for conviction, even for second-degree kidnapping, it is well within this definition and as such, it is categorically a crime of violence.

We start with the MPC's definition of kidnapping, which requires unlawful removal of an individual "from his place of residence or business, or a substantial distance from the vicinity where he is found," or unlawful confinement "for a substantial period in a place of isolation" for one of four specific purposes:

> (a) to hold for ransom or reward, or as a shield or hostage; or
> (b) to facilitate commission of any felony or flight thereafter; or
> (c) to inflict bodily injury on or to terrorize the victim or another; or
> (d) to interfere with the performance of any governmental or political function.

MODEL PENAL CODE § 212.1. Removal or confinement is unlawful where "it is accomplished by force, threat or deception, or in the case of a person who is [younger than] 14 or incompetent, if it is accomplished without consent" of a parent or guardian. Id. Thus, the MPC has as aggravating elements both confinement for a specific nefarious purpose and an element of substantiality, in addition to unlawful restraint or removal.

However, while it provides a useful guide, the Model Penal Code "is not the exclusive standard by which we define the terms

14

used in the Sentencing Guidelines." United States v. Gonzalez-Ramirez, 477 F.3d 310, 317 (5th Cir. 2007). We also review other states' kidnapping statutes for common elements. Many states separate the elements for first and second degree, or simple and aggravated kidnapping. See, e.g., N.Y. PENAL LAW §§ 135.00, 135.20, 135.25; TEX. PENAL CODE ANN. §§ 20.01, 20.03, 20.04. Our inquiry is not limited by degree, however, and "we look to all offenses termed kidnapping by the various criminal codes." De Jesus Ventura, 565 F.3d at 876. The task before us is merely to "employ a common-sense approach" in order to "ascertain the contemporary meaning." Gonzalez-Ramirez, 477 F.3d at 316. We are "not required to apply the most nuanced, restrictive, or cutting-edge interpretation." Id.

We agree with the District of Columbia circuit that the most common approach "requires some kind of heightened intent beyond the mere intent to restrain the victim's liberty." De Jesus Ventura, 565 F.3d at 877; see also, United States v. Gonzalez-Perez, 472 F.3d 1158, 1161 (9th Cir. 2007) (Because the "Florida false imprisonment statute contains no nefarious purpose element whatsoever . . . [it] does not conform to the generic, contemporary definition of kidnapping."). Much like the MPC, twenty-one state statutes, including North Carolina's, define kidnapping as unlawful removal or confinement for a

15

specific nefarious purpose.[2] Six additional states include some element of heightened intent but do not specifically use the nefarious purposes construct of the MPC.[3]

Fifteen states include a nefarious purpose requirement but only as a disjunctive element in conjunction with other alternative elements.[4] For example, many states use the nefarious purposes to distinguish between degrees of kidnapping. Compare ALA. CODE § 13A-6-43 (first degree kidnapping requires nefarious purpose, with ALA. CODE § 13A-6-44 (second degree kidnapping does not). Only eight states and the District of Columbia do not include a heightened intent element at all: four of those states

---

[2] See ARIZ. REV. STAT. ANN. § 13-1304; ARK. CODE ANN. § 5-11-102(a); DEL. CODE ANN. tit. 11, §§ 783, 783A, 786; FLA. STAT. § 787.01(1); HAW. REV. STAT. § 707-720(1); IOWA CODE § 710.1; KAN. STAT. ANN. § 21-5408; KY. REV. STAT. ANN. § 509.010, .040; MICH. COMP. LAWS § 750.349; MINN. STAT. § 609.25(1); MO. REV. STAT. § 565.110(1); NEB. REV. STAT. § 28-313; N.H. REV. STAT. ANN. § 633:1; N.J. REV. STAT. § 2C:13-1(a)-(b); N.M. STAT. ANN. § 30-4-1; N.C. GEN. STAT. § 14-39(a). N.D. CENT. CODE § 12.1-18-01(1); 18 PA. CONS. STAT. ANN. § 2901(a); S.D. CODIFIED LAWS § 22-19-1; VT. STAT. ANN. tit. 13, § 2405; WYO. STAT. ANN. § 6-2-201.

[3] See 720 ILL. COMP. STAT. 5/10-1; MASS. GEN. LAWS ch. 265, § 26; OR. REV. STAT. §§ 163.225, .235; R.I. GEN. LAWS § 11-26-1; W. VA. CODE § 61-2-14; WIS. STAT. § 940.31(1).

[4] See ALA. CODE §§ 13A-6-40, -43, -44; ALASKA STAT. § 11.41.300(a)-(b); COLO. REV. STAT. §§ 18-3-301, -302; CONN. GEN. STAT. §§ 53a-91, -92, -94; LA. REV. STAT. ANN. §§ 14:44, :45; IDAHO CODE ANN. § 18-4501, -4502; ME. REV. STAT. ANN. tit. 17-A, § 301(1); MONT. CODE ANN. §§ 45-5-302, -303; NEV. REV. STAT. § 200.310; N.Y. PENAL LAW §§ 135.00, .20, .25; OHIO REV. CODE ANN. § 2905.01; TENN. CODE ANN. §§ 39-13-303, -304, -305; TEX. PENAL CODE ANN. §§ 20.01, .03, .04; UTAH CODE ANN. §§ 76-5-301, -302; WASH. REV. CODE §§ 9A.40.010-.030.

require some additional element of added severity,[5] such as requiring the perpetrator to move the victim for the crime to be considered kidnapping, and four states and the District of Columbia require nothing more than the intentional and unlawful restraint of the victim.[6]

The enumerated nefarious purposes required by North Carolina are well within the heartland of generic kidnapping. The statute requires the perpetrator to specifically intend a heinous criminal act - the worst of the worst – abduction or restraint of victims for ransom or to further the commission of a felony, to terrorize victims or cause them bodily injury, or to hold them in involuntary servitude. See N.C. GEN. STAT. § 14-39(a). It would be astonishing if restraint or removal of a victim for one of these nefarious purposes failed to constitute generic kidnapping. The North Carolina statute is not loosely or nebulously written nor does it broadly sweep in conduct not related to the above nefarious aims. We find it hard to conceive that a statute that requires the perpetrator to intend to engage in such specific egregious behavior might be too wide-ranging to be within the generic definition of kidnapping.

---

[5] CAL. PENAL CODE § 207 (kidnapper must move victim from one place to another); GA. CODE ANN. § 16-5-40 (same); IND. CODE § 35-42-3-2 (same); MD. CODE ANN., CRIM. LAW § 3-502 (same).

[6] See D.C. CODE § 22-2001; MISS. CODE ANN. § 97-3-53; OKLA. STAT. tit. 21, § 741; S.C. CODE ANN. § 16-3-910; VA. CODE ANN. § 18.2-47.

Flores-Granados takes issue with the fact that North Carolina's specific purposes do not track exactly the specific nefarious purposes of the MPC. See Appellant's Reply Br. at 9-10. However, the categorical approach does not require us to match up the language word for word between the statute and the generic definition. Taylor requires only that the statutory definition "substantially corresponds" with the generic enumerated crime to be considered a crime of violence. 495 U.S. at 602. Further, we consider whether there is "a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). Although it may not be a perfect match, the North Carolina statute is narrowly drawn and enumerates specific and serious crimes. We do not think it a realistic probability that convictions under the statute would sweep too broadly.

D.

Flores-Granados argues, however, that the generic definition must also, as the MPC does, encompass elements that embody a substantiality requirement in addition to any heightened intent requirement. We disagree. While a substantiality element may be sufficient to render a statute within the generic definition of kidnapping where it is the only

18

additional aggravating factor, it is not necessary where the law includes specific nefarious purposes.

Twenty states do include a substantiality requirement, most commonly that the perpetrator must "restrict [the victim's] movement in such a manner as to interfere substantially with the person's liberty,"[7] but a majority of states do not. See, e.g., HAW. REV. STAT. §§ 707-700 (definitions of terms in kidnapping and other criminal statutes), -720. Furthermore, of the minority of states that do have a substantiality requirement, significantly, only eleven are states in which both a specific nefarious purpose and a requirement of substantiality are mandatory for the offense to qualify as kidnapping.[8]  Thus, we think, that where nefarious purposes are required – as they are here –

---

[7] See ALA. CODE §§ 13A-6-40, -43, -44; ALASKA STAT. §§ 11.41.300(a)-(b), .370; ARIZ. REV. STAT. ANN. §§ 13-1301, -1304; ARK. CODE ANN. § 5-11-102(a); CONN. GEN. STAT. §§ 53a-91, -92, -94; DEL. CODE ANN. tit. 11, §§ 783, 783A, 786; HAW. REV. STAT. §§ 707-700, -720(1); KY. REV. STAT. ANN. § 509.010, .040; ME. REV. STAT. ANN. tit. 17-A, § 301; MO. REV. STAT. § 565.110(1); NEB. REV. STAT. §§ 28-312, -313; N.J. REV. STAT. § 2C:13-1(a)-(b); N.Y. PENAL LAW §§ 135.00, .20, .25; N.D. CENT. CODE § 12.1-18-01, -04; 18 PA. CONS. STAT. ANN. § 2901(a); TENN. CODE ANN. §§ 39-13-303, -304, -305; TEX. PENAL CODE ANN. §§ 20.01, .03, .04; UTAH CODE ANN. §§ 76-5-301, -302; VT. STAT. ANN. tit. 13, §§ 2404, 2405(a); WASH. REV. CODE §§ 9A.40.010-.030.

[8] See ARIZ. REV. STAT. ANN. §§ 13-1301, -1304; ARK. CODE ANN. § 5-11-102(a); DEL. CODE ANN. tit. 11, §§ 783, 783A, 786; HAW. REV. STAT. §§ 707-700, -720(1); KY. REV. STAT. ANN. § 509.010, .040; MO. REV. STAT. § 565.110(1); NEB. REV. STAT. §§ 28-312, -313; N.J. REV. STAT. § 2C:13-1(a)-(b); N.D. CENT. CODE § 12.1-18-01, -04; 18 PA. CONS. STAT. ANN. § 2901(a); VT. STAT. ANN. tit. 13, §§ 2404, 2405(a).

additional aggravating elements, such as substantiality, are not necessary for the statute to be within the generic definition of kidnapping.

The defendant relies on Fifth Circuit precedents that rejected the assertion that "a specified purpose or intent is required for a state kidnapping conviction to constitute a crime of violence." Gonzalez-Ramirez, 477 F.3d at 318. Those cases, defendant argues, demonstrate that where proof of "substantial interference with the victim's liberty" or "circumstances exposing the victim to substantial risk of bodily injury, or confinement as a condition of involuntary servitude" is not required, a kidnapping statute is too broad to be considered within the generic definition. See United States v. Moreno-Florean, 542 F.3d 445, 452-56 (5th Cir. 2008). However, none of the statutes at issue in these cases included as an element the nefarious purposes required here by North Carolina. Thus, the court had to rely on whether each statute included a substantiality requirement to determine if it was too broad to be within the generic definition of kidnapping.

Contrary to defendant's view, the Fifth Circuit cases fit nicely with our holding today. In Cervantes-Blanco, the Colorado statute, unlike North Carolina's, required no additional aggravating factors beyond unlawful restraint by force, threat or fraud. See 504 F.3d at 586 ("The question therefore becomes

20

whether a statute that contains only [the elements of removal or confinement by force, threat, or fraud] and lacks any additional aggravating elements, such as the specified purpose requirements of the MPC definition, qualifies [as a crime of violence].”); see also Najera-Mendoza, 683 F.3d at 630. Similarly in Moreno-Florean, that court found that “[a] two-element definition of kidnapping would sweep more broadly than the generic, contemporary meaning of [kidnapping.]” 542 F.3d at 454. Again, North Carolina’s is not a bare, two-element statute. The Sixth Circuit’s generic definition of kidnapping coincides with this explanation as well. See United States v. Soto-Sanchez 623 F.3d 317, 322-24 (6th Cir. 2010) (finding the statute overly broad where only “forcible confinement of the victim [is] sufficient for a charge of kidnapping” without additional aggravating elements).

In addition, in Gonzalez-Ramirez and Iniguez-Barba, the court held only that a substantiality requirement was sufficient for a statute to be narrower than the generic definition of kidnapping, not that it was necessary. See Gonzalez-Ramirez, 477 F.3d at 319 (“Tennessee’s kidnapping statute is . . . at least as restrictive, if not more restrictive, than a majority of state kidnapping statutes.”); United States v. Iniguez-Barba, 485 F.3d 790, 792-93 (5th Cir. 2007) (finding that while specific purposes are not necessary, “the additional aggravating

21

elements of substantial risk of injury or confinement as a condition of servitude" are sufficient for the New York kidnapping statute to be within the generic definition).

Our holding is thus consistent with those of other circuits. At least one aggravator is required. But where an element of substantiality is present, the nefarious purposes may not be necessary. See Gonzalez-Ramirez, 477 F.3d at 319; Iniguez-Barba, 485 F.3d at 792. And this conclusion holds equally true in the inverse. Where a nefarious purpose or similar heightened intent requirement is present as an element, substantiality need not be required. See De Jesus Ventura, 565 F.3d at 877; Gonzalez-Perez, 472 F.3d at 1161. To be within generic kidnapping, in addition to unlawful restraint by force, threat or fraud, a statute must contain as an element an additional aggravating factor such as nefarious purposes or substantial interference with the victim's liberty, but need not require both.

The laws of the states support this conclusion. Thirty state statutes include either a substantiality component or specific nefarious purposes as elements.[9] Eleven and the MPC

---

[9] See ALA. CODE §§ 13A-6-40, -43, -44; ALASKA STAT. §§ 11.41.300(a)-(b), .370; ARIZ. REV. STAT. ANN. §§ 13-1301, -1304; ARK. CODE ANN. § 5-11-102(a); CONN. GEN. STAT. §§ 53a-91, -92, -94; DEL. CODE ANN. tit. 11, §§ 783, 783A, 786; FLA. STAT. § 787.01(1); HAW. REV. STAT. § 707-720; IOWA CODE § 710.1; KAN. STAT. ANN. § 21-
(Continued)

22

include both.[10] An additional six states include as a requirement an element of heightened intent.[11] Only four states and the District of Columbia include no additional aggravating factors[12] – and at least two of those state statutes have been found to sweep broadly enough to be outside the generic definition. See Najera-Mendoza, 683 F.3d at 630 (finding conviction under Oklahoma statute not within generic definition); De Jesus Ventura, 565 F.3d at 877 (finding Virginia statute outlaws conduct broader than generic definition).

---

5408; KY. REV. STAT. ANN. § 509.010, .040; ME. REV. STAT. ANN. tit. 17-A, § 301; MICH. COMP. LAWS § 750.349; MINN. STAT. § 609.25(1); MO. REV. STAT. § 565.110(1); NEB. REV. STAT. §§ 28-312, -313; N.H. REV. STAT. ANN. § 633:1; N.J. REV. STAT. § 2C:13-1(a)-(b); N.M. STAT. ANN. § 30-4-1; N.Y. PENAL LAW §§ 135.00, .20, .25; N.C. GEN. STAT. § 14-39(a). N.D. CENT. CODE § 12.1-18-01, -04; 18 PA. CONS. STAT. ANN. § 2901(a); S.D. CODIFIED LAWS § 22-19-1; TENN. CODE ANN. §§ 39-13-303, -304, -305; TEX. PENAL CODE ANN. §§ 20.01, .03, .04; UTAH CODE ANN. §§ 76-5-301, -302; VT. STAT. ANN. tit. 13, §§ 2404, 2405(a); WASH. REV. CODE §§ 9A.40.010-.030; WYO. STAT. ANN. § 6-2-201.

[10] See ARIZ. REV. STAT. §§ 13-1301, -1304; ARK. CODE ANN. § 5-11-102(a); DEL. CODE ANN. tit. 11, §§ 783, 783A, 786; HAW. REV. STAT. §§ 707-700, -720(1); KY. REV. STAT. ANN. § 509.010, .040; MO. REV. STAT. § 565.110(1); NEB. REV. STAT. §§ 28-312, -313; N.J. REV. STAT. § 2C:13-1(a)-(b); N.D. CENT. CODE § 12.1-18-01, -04; 18 PA. CONS. STAT. ANN. § 2901(a); VT. STAT. ANN. tit. 13, §§ 2404, 2405(a); see also MODEL PENAL CODE § 212.1.

[11] See 720 ILL. COMP. STAT. 5/10-1; MASS. GEN. LAWS ch. 265, § 26; OR. REV. STAT. §§ 163.225, .235; R.I. GEN. LAWS § 11-26-1; W. VA. CODE § 61-2-14; WIS. STAT. § 940.31(1).

[12] See D.C. CODE § 22-2001; MISS. CODE ANN. § 97-3-53; OKLA. STAT. tit. 21, § 741; S.C. CODE ANN. § 16-3-910; VA. CODE ANN. § 18.2-47.

23

IV.

We do not suggest the approach we have taken here is the only way to characterize the nature of a predicate offense. Because this is a sentencing procedure, no mechanical exercise can ever fully supplant the common sense and good judgment of the sentencing judge. A "simple strategy of 'counting noses' will [not] control the outcome of the categorical approach in all cases for all crimes." United States v. Rangel-Castaneda, 709 F.3d 373, 379 (4th Cir. 2013). The greater the variations in state statutes, moreover, the more difficult a single paradigmatic act may be to find. Id. ("Our federal system allows the various states to define offenses as they see fit, unencumbered by overly stringent federal sentencing standards. That is precisely why 'minor variations in terminology' must be respected." (quoting Taylor, 495 U.S. at 599)). In this case, our review of state laws has served to identify the North Carolina act as a mainstream statute, not an outlier. Because it is limited to conduct for a specific nefarious purpose, it proscribes criminal activity that is well within the generic definition of kidnapping and thus constitutes a crime of violence. Put simply, the statute is what we mean when we say "kidnapping." As such, the addition of a 16-level enhancement to Flores-Granados' sentence for reentry after a prior conviction

24

for a crime of violence was proper and the judgment of the district court is hereby affirmed.

AFFIRMED