**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

No. 16-4398

UNITED STATES OF AMERICA,

        Plaintiff - Appellee,

    v.

CHRISTOPHER HARRIS,

        Defendant - Appellant.

Appeal from the United States District Court for the District of South Carolina, at Charleston.  C. Weston Houck, Senior District Judge.  (2:10-cr-01198-CWH-3)

Argued:  March 22, 2018                         Decided:  May 21, 2018

Before GREGORY, Chief Judge, KEENAN, and FLOYD, Circuit Judges.

Affirmed in part, reversed in part, and remanded with instructions by published opinion. Chief Judge Gregory wrote the opinion, in which Judge Keenan and Judge Floyd joined.

**ARGUED:**  Jill Eskin Major HaLevi, MEDIATION & LEGAL SERVICES, LLC, Charleston, South Carolina, for Appellant.  Robert Nicholas Bianchi, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee. **ON BRIEF:** Beth Drake, United States Attorney, Nick Bianchi, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Charleston, South Carolina, for Appellee.

GREGORY, Chief Judge:

Christopher Harris appeals his twenty-year sentence for conspiracy to manufacture and distribute marijuana. He primarily argues that the district court erred by failing to consider non-frivolous mitigating factors, declining to apply a two-level reduction for acceptance of responsibility, and treating second-degree kidnapping under North Carolina law as a crime of violence under the Federal Sentencing Guidelines. Harris also argues that he should have been allowed to file his sentencing memorandum under seal in district court. Due to binding circuit precedent, we must affirm Harris's sentence despite sharing the district court's misgivings about imposing a very lengthy sentence for a marijuana offense. We reverse and remand for the limited purpose of sealing Harris's sentencing memorandum and requiring Harris to file a redacted version to preserve the privacy of his family.

I.

Appellant Christopher Harris took part in a conspiracy to grow and distribute marijuana from 2010 to 2011. Officers seized 499 marijuana plants from a co-conspirator's motel before searching Harris's residence, where they found a disputed number of marijuana plants.

The Government charged Harris with a number of conspiracy and drug offenses. Harris agreed to plead guilty to one count of knowingly or intentionally manufacturing marijuana under 21 U.S.C. § 841. J.A. 83. At the plea hearing, the Government claimed that agents seized 108 marijuana plants from Harris, but Harris maintained that he had only

2

89. J.A. 98–100. Harris otherwise agreed with the facts presented by the Government and entered his guilty plea. Despite the numerical dispute, the district court accepted the plea, believing drug quantity to be purely a sentencing issue that could be resolved later. J.A. 99–100.

Before his sentencing hearing could take place, Harris fled the country. On December 29, 2011, Harris cut his ankle monitor and escaped to Thailand, where he married a Thai national. Harris was arrested in 2012 and sent back to the United States for sentencing. Meanwhile, his wife gave birth to their child in Thailand.

The district court sentenced Harris on January 30, 2013. Because of his prior convictions, Harris was determined to be a career offender, which contributed to a Guidelines range of 360 months to life. The district court declined the requested acceptance of responsibility reduction because of Harris's escape to Thailand. However, the district court recognized that Harris's criminal history primarily consisted of marijuana-related offenses. According to the district court, the nationwide trend towards marijuana legalization had reduced the relative severity of marijuana offenses and therefore justified a significantly lower sentence. Ultimately, the district court decided that a downward variance was appropriate and imposed a sentence of 240 months, ten years lower than the bottom of the Guidelines range.

Harris argued for an even lower sentence because his co-defendants had received substantially lower sentences. Among the co-conspirators, the second longest sentence was five years. However, the district court noted that Harris's co-defendants were not career offenders, which accounted for the disparity.

3

Nearly two years after Harris began serving his sentence, his conviction was vacated under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Contrary to the district court's understanding at the plea hearing, the dispute over the number of plants seized from Harris was critical to the validity of the guilty plea. Distribution of at least 100 marijuana plants had the effect of increasing Harris's maximum sentence under 21 U.S.C. § 841(b)(1)(B). As a result, that fact had to be either found by a jury beyond a reasonable doubt or pleaded to by the defendant. *See id.* at 490 ("Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."). This error was corrected on a 28 U.S.C. § 2255 motion, and Harris's conviction was vacated in 2015.

With his conviction vacated, Harris negotiated a new plea. Harris agreed to plead guilty to conspiracy to distribute 100 or more marijuana plants, rather than actual manufacturing or distribution. This obviated the dispute over the plants seized from Harris because, under conspiracy liability, Harris was responsible for the well-over 100 plants that were seized from his co-conspirator(s). The Government continued to pursue the career offender enhancement, arguing that Harris's prior conviction for kidnapping in North Carolina was a crime of violence under § 4B1.2 of the Federal Sentencing Guidelines. However, unlike before, the Government declined to pursue an enhancement for a prior drug offense under 21 U.S.C. § 851. J.A. 239.

On June 28, 2016, the district court conducted Harris's second sentencing hearing, which is the subject of this appeal. The district court agreed with the Government that Harris should again be sentenced as a career offender. Nevertheless, because the

4

Government did not pursue the drug enhancement under 21 U.S.C. § 851, Harris's Guidelines range dropped to 262 to 327 months, down from the 360 months to life that the Guidelines previously recommended. Harris presented mitigation arguments, arguing that he had been successfully rehabilitated while in prison and that marijuana offenses are generally less severe than other offenses in light of marijuana legalization as a national trend.

Notwithstanding the drop in the Guidelines range, the district court again sentenced Harris to 240 months, with credit for the time that Harris had already served. The district court indicated that it was imposing the same sentence, for the reasons that it gave at the first sentencing hearing, because Harris was largely in the same position. The district court discussed the rehabilitation evidence but discredited it in light of Harris's criminal history. The district court also refused to grant a two-level reduction for acceptance of responsibility, again because of Harris's escape to Thailand. Finally, the district court declined to seal Harris's sentencing memorandum, concluding that it contained only routine information.

This direct appeal followed, challenging both the sentence and the refusal to restrict public access to the sentencing filing.

## II.

On appeal, Harris challenges his sentence on four grounds. First, Harris argues that the district court did not give his sentence the full, individualized consideration to which he was entitled because the court wanted to reinstate the vacated sentence from the outset

5

and may have confused the procedural posture of the case. Second, Harris argues that he should have received a two-level reduction for acceptance of responsibility. Third, Harris argues that he should not have been sentenced as a career offender because kidnapping under North Carolina law was not categorically a "crime of violence." And fourth, Harris argues that his sentence under the career offender provision of the Sentencing Guidelines violates the Eighth Amendment. For the reasons below, we affirm Harris's sentence.

A.

Despite some arguably imprecise language, the district court adequately conducted a *de novo* sentencing hearing by performing an individualized assessment of all relevant sentencing factors. As this Court held in *United States v. Blue*, a sentencing judge must explain each sentence that she imposes by addressing all non-frivolous mitigation arguments raised by the defendant. 877 F.3d 513, 518 (4th Cir. 2017). The sentencing court's explanation need not be extensive, but the record must make clear that the judge actually listened to, considered, and rendered a decision on these arguments such that this Court can conduct a meaningful review of the sentence imposed. *Id.* at 520–22. Here, the district court satisfied this requirement by directly explaining and incorporating by reference its reasons for dismissing each of the mitigation arguments that Harris raised.

Harris argues that, in the district court's own words, it did not conduct a new sentencing hearing but instead performed a perfunctory one with the goal of reaching the same outcome as it previously reached. Specifically, the district court said, "I gave him what I thought was a valid, fair sentence. And I still think it's valid, and I still think it's fair. But why is it that you insist I sentence him again?" J.A. 238. The court later

reiterated, "Last time I gave him 240 [months]. Now why can't I reinstate that sentence?" J.A. 240. Then, in announcing the sentence, the district court declared that the "term of 240 months is hereby reinstated." J.A. 262.

If that were all that the district court did, then the sentence would likely be procedurally unreasonable. But the district court did in fact listen to the defense's arguments for a lower sentence and expressly addressed each of them, performing the individualized sentencing hearing to which Harris was entitled.

First, the district court directly addressed Harris's primary mitigation argument—post-conviction rehabilitation—and explained its reasons for discounting it. Harris argued that he had become rehabilitated over the past four years in prison and that the need for rehabilitation, an 18 U.S.C. § 3553(a) factor, was thus lessened. *See United States v. Slappy*, 872 F.3d 202, 208 (4th Cir. 2017) (vacating sentence because district court failed to address rehabilitation evidence at sentencing). To make his point, Harris presented certificates from the numerous programs he had completed, as well as testimony from a program coordinator about his participation. In response, the district court recited Harris's lengthy criminal history and stated,

> In considering what the defendant says, and what he predicts about his life and what others say and predict is important, and it is certainly given great weight by the Court, but we can't overlook what he's done. We can only wonder how many times he's stood in a court like this and said, "This is my last crime. I have a support group. I have everything going for me. Give me another chance and I'll be a credit to society." Many factors go into sentencing and a criminal record is only one of those. We can't predict if someone will do in the future what they did in the past, but what they did in the past is still relevant in considering what we should do with them as far as a sentence is concerned. I gave this same issue with a little bit different facts

7

consideration a while back.  Then I was looking at a . . . 360 months to life Guideline range.  I felt that 240 months was enough and I still feel that way.

J.A. 260–61.  This explanation, while not extensive, is sufficient for this Court to ascertain and review the specific basis for the district court's decision—namely that the rehabilitation evidence did not sufficiently show that Harris was a changed man compared to four years ago and did not outweigh his criminal history.  *See Blue*, 877 F.3d at 520 (holding that district court's sentencing explanation must be "sufficient to demonstrate reasoned decisionmaking and provide an adequate basis for appellate review").  The court's explanation was unambiguous, was not open to multiple interpretations, and specifically identified the defendant's personal circumstances, including the evidence he presented at the hearing.  *Cf. United States v. Carter*, 564 F.3d 325, 329 (4th Cir. 2009) (vacating sentence because "district court's asserted 'reasons' could apply to any sentence, regardless of the offense, the defendant's personal background, or the defendant's criminal history").  In context, the district court's intention to "reinstate" Harris's sentence merely meant that it found no reason to impose a different one, not that he would not consider any new evidence.  Whether or not this Court agrees with the district court's assessment of the rehabilitation evidence, there is no procedural error here for failure to consider that evidence.

Second, the district court adequately considered Harris's other argument for a lower sentence, namely the national trend toward marijuana legalization, which mitigated the seriousness of Harris's offense and criminal history.  During the first sentencing hearing,

8

the district court had, appropriately, cited marijuana legalization as the primary reason for applying a significant downward variance from the Guidelines range:

> [A]s a citizen of this country, I can't help but see what's going on in this country. I can't help but note that . . . a number of states in this country have legalized marijuana for certain purposes. The Government, Federal Government, has gone so far as to announce a policy that it will not enforce the drug laws in those states where the use of marijuana is for the purposes authorized by the law of those states . . . . [I]t's something we've got to look at when we look at the big picture. Nobody's legalizing cocaine, nobody is legalizing bank robbery, but there is a trend in this country to legalize marijuana. And I can't look at the offenses with which this defendant is charged, unless I look at it through that context. His convictions . . . from the age 17 forward, constantly have to do with marijuana . . . . I think that there is a more appropriate sentence that will serve the purposes of Section 3553(a), and provide all of the guarantees that sentencing under that section requires.

J.A. 139–40. At the second sentencing, the district court again cited the need for the sentence "to reflect the seriousness of the offense" as its sole reason for a variance below the Guidelines range. J.A. 479. The district court further indicated that it was imposing the same sentence of 240 months for the same reasons that it gave at the previous hearing, thus incorporating by reference its prior discussion on the impact of marijuana legalization. These circumstances demonstrate that the district court again considered and factored marijuana legalization into the eventual sentence.

Finally, the district court did not confuse the nature and purpose of the sentencing hearing, as Harris contends. The district court initially misstated the procedural posture of the case when it said that Harris was back for a resentencing because of a change in the law. In fact, no law had changed—Harris's conviction was vacated under *Apprendi*, which had been decided before Harris's first sentencing. However, the district court asked the

9

parties to confirm whether its understanding was correct, and indeed the Government explained that the second sentencing was due to an *Apprendi* error. Similarly, the district court appeared to have briefly confused Harris's case with another case, but the court soon corrected its own mistake. J.A. 256. Thus, there is no evidence that any misunderstanding went uncorrected or otherwise altered either the nature or outcome of the hearing.

For the above reasons, we conclude that the district court provided an individualized assessment of the mitigating factors presented in this case. Accordingly, Harris's argument that he was denied the benefit of a *de novo*, individualized sentencing hearing is without merit.

B.

The district court did not clearly err in declining to apply the acceptance-of-responsibility reduction. Section 3E1.1 of the Guidelines "decrease[s] the offense level by 2 levels" when "the defendant clearly demonstrates acceptance of responsibility for his offense." Federal Sentencing Guidelines Manual (U.S. Sentencing Comm'n 2010).[1] The defendant has the burden of proving acceptance of responsibility by a preponderance of the evidence. *United States v. May*, 359 F.3d 683, 693 (4th Cir. 2004). Additionally, defendants who have obstructed justice must make a heightened showing of acceptance of responsibility to receive the reduction. The "determination of the sentencing judge is

---

[1] It is unclear from the record which version of the Guidelines Manual the district court applied. We adopt here the 2010 version of the Manual because that was the Manual in effect at the time Harris committed the offense and because the language agreed upon by the parties is consistent with the 2010 version. *See also Peugh v. United States*, 569 U.S. 530, 541 (2013) ("[A]pplying amended sentencing guidelines that increase a defendant's recommended sentence can violate the *Ex Post Facto* Clause.").

10

entitled to great deference," § 3E1.1. cmt. 5, and is reviewed for clear error. *United States v. Miller*, 77 F.3d 71, 74 (4th Cir. 1996).

To determine whether a defendant has accepted responsibility, the sentencing judge must weigh the totality of the circumstances. The Guidelines commentary suggests that courts consider any truthful admission of the conduct comprising the offense, voluntary termination of criminal conduct, voluntary payment of restitution, voluntary surrender to authorities, cooperation with authorities, post-offense rehabilitation, and the timeliness of acceptance of responsibility, among other factors. § 3E1.1. cmt. 1.

Ordinarily, the two-level reduction is not available when the defendant has received an enhancement for obstruction of justice under § 3C1.1 of the Guidelines. *See* § 3E1.1. cmt. 4. Here, Harris received an enhancement under § 3C1.1 for his escape to Thailand pending sentencing. Harris therefore has the burden of showing that there are "extraordinary" circumstances justifying a reduction in this case. *See United States v. Hudson*, 272 F.3d 260, 264 (4th Cir. 2001).

Defendants have numerous means of demonstrating an "extraordinary" acceptance of responsibility or other circumstance. *United States v. Honken*, 184 F.3d 961, 969 (8th Cir. 1999) (noting that what is extraordinary has no "magic formula" and is instead determined based on totality of circumstances). For instance, a defendant who escapes custody might be able to demonstrate an exceptional circumstance if he immediately turns himself over to authorities. *See United States v. Gregory*, 315 F.3d 637, 641 (6th Cir. 2003). A defendant might also be exceptionally cooperative with law enforcement by readily confessing and offering evidence of his guilt. *See United States v. Hicks*, 948 F.2d

11

877, 885 (4th Cir. 1991) (defendant voluntarily revealed that his house contained additional drugs and disclosed that money in his possession was related to drug transactions). Alternatively, some types of conduct justifying an obstruction enhancement might not be incompatible with acceptance of responsibility. *See United States v. Hopper*, 27 F.3d 378, 383 (9th Cir. 1994) (noting that obstructive conduct was brief, not ongoing or methodical, and was followed by full acceptance of responsibility for both initial offense and later obstruction). In other words, after having obstructed justice, Harris must show that he has done something atypical or beyond the ordinary course either to take responsibility or to minimize the effects of his own obstruction to merit the reduction.

Harris primarily argues that his post-conviction rehabilitative efforts demonstrate extraordinary acceptance of responsibility.[2] Harris presented evidence that he had made progress in various rehabilitation programs and classes and that he had not incurred any infractions during his four years of incarceration. While post-offense rehabilitative efforts are relevant to acceptance of responsibility, the record does not contain any testimony or evidence to indicate whether Harris's behavior or participation in such programs was atypical compared to other inmates and those who ordinarily receive the reduction. While the district court could have inferred that Harris's performance was exceptional, it declined to do so, and we lack a sufficient basis to conclude that the district court committed clear error.

---

[2] Harris also argues that he truthfully admitted to committing the underlying offense and paid the court fee for this case. But the former appears to be the minimum conduct necessary to qualify for the reduction, and the latter is obligatory, not voluntary. *See May*, 359 F.3d at 693. As such, these circumstances are not "extraordinary."

12

Ultimately, the district court concluded that Harris's flight to Thailand continued to outweigh his rehabilitative efforts. Indeed, not only did Harris cut his ankle monitor while out on bond, he fled to a distant country and started a family—clearly evincing a desire to evade responsibility indefinitely if not permanently. *See United States v. Knight*, 606 F.3d 171, 172, 177 (4th Cir. 2010) (affirming denial of reduction because defendant fled while out on bond). Nor did he voluntarily cease his obstructive conduct. *See, e.g.*, *United States v. Salazar-Samaniega*, 361 F.3d 1271, 1280 (10th Cir. 2004); *United States v. Nguyen*, 339 F.3d 688, 691 (8th Cir. 2003). Without any evidence in the record to indicate that Harris maximized his rehabilitation opportunities or reached an unusual level of rehabilitation relative to other inmates, we cannot say that the district court clearly erred when it concluded that Harris's extraordinary escape continued to outweigh other acts of contrition.

In sum, the district court certainly could have weighed the evidence differently, but its decision is entitled to deference, and we affirm in the absence of any evidence clearly undermining its decision.

## C.

Under Fourth Circuit precedent, we are compelled to hold that kidnapping under North Carolina law is a "crime of violence" under § 4B1.2 of the Guidelines. The 2010 version of the Guidelines does not enumerate kidnapping as a crime of violence—but its commentary does. § 4B1.2(a)(2), cmt. 1. As this Court has held, "commentary to the Sentencing Guidelines is authoritative and binding, unless it violates the Constitution or a federal statute" or is inconsistent with the Guideline itself. *United States v. Peterson*, 629 F.3d 432, 435 (4th Cir. 2011) (citing *Stinson v. United States*, 508 U.S. 36, 38 (1993))

13

(internal quotation marks removed). Therefore, for Harris to prevail, we must conclude that either (1) the commentary's listing of "kidnapping" conflicts with the Guidelines or is unlawful or (2) kidnapping under North Carolina law is broader than the Guideline's definition of kidnapping. *See id.* at 436. Harris has not identified any conflict, and the latter possibility is foreclosed by this Court's precedent. *See United States v. Flores-Granados*, 783 F.3d 487, 498 (4th Cir. 2015). Accordingly, we must affirm the enhancement.

First, Harris has not presented any argument as to any potential conflict between the commentary and any Guideline or law. As a general matter, the Fourth Circuit has held that the list of offenses in the commentary simply "adds to the list of example crimes listed in § 4B1.2(a)(2)." *Peterson*, 629 F.3d at 435; *accord United States v. Mobley*, 687 F.3d 625, 628–29 (4th Cir. 2012) ("The commentary to § 4B1.2 . . . expands upon the roster of enumerated offenses by specifying additional ones, such as manslaughter and kidnapping, that also constitute crimes of violence."). Harris has not indicated how the addition of kidnapping to the list of enumerated offenses might conflict with the Guideline. Nor has Harris identified how its addition would be inconsistent with any law. Absent a showing of any such conflict, the commentary's enumeration of kidnapping is "authoritative and binding," *Peterson*, 629 F.3d at 435, and we therefore conclude that generic kidnapping is a crime of violence under § 4B1.2.

The remaining question is whether Harris's conviction for second-degree kidnapping, as defined under North Carolina law, categorically fits within the generic definition of kidnapping. Under N.C. Gen. Stat. Ann. § 14-39, kidnapping occurs when a

14

person "unlawfully confine[s], restrain[s], or remove[s] from one place to another" any person "without consent" for one of several enumerated criminal purposes. These purposes include holding the victim hostage, inflicting serious bodily harm, holding the victim in involuntary servitude, and subjecting the victim to sexual servitude. *Id.* Kidnapping in North Carolina may be committed via deception, i.e., without force. *State v. Fulcher*, 294 N.C. 503, 523 (1978). North Carolina subdivides kidnapping into two degrees depending on the actual harm to the victim. Kidnapping in the second degree—Harris's offense— occurs when "the person kidnapped was released in a safe place by the defendant and had not been seriously injured or sexually assaulted." N.C. Gen. Stat. Ann. § 14-39(b).

When interpreting another part of the Guidelines, this Court has already held that kidnapping under North Carolina law fits within the generic definition of the offense. *Flores-Granados*, 783 F.3d at 498. Second-degree kidnapping is a specific subset of kidnapping and is, therefore, also within the generic definition of the offense. Although second-degree kidnapping is less severe because of the mitigating factor of releasing the victim unharmed, none of the elements of the kidnapping offense are negated by the absence of actual physical injury to the victim. Accordingly, the reduced severity of second-degree kidnapping does not change the fact that kidnapping, as a whole, categorically fits within the generic definition of the offense.

We are therefore compelled to conclude that Harris's conviction for second-degree kidnapping is a crime of violence under § 4B1.2. First, this Court has already held that kidnapping and other listed crimes in the commentary are additional enumerated offenses absent any conflict. Second, this Court has also held that North Carolina kidnapping is no

broader than the generic definition of the offense. Taking those two holdings together, the inevitable conclusion is that Harris's conviction categorically falls within the bounds of an enumerated offense.

## D.

Harris briefly argues that the career offender provision of the Guidelines creates sentences so grossly disproportionate to the punished offenses that it violates the Eighth Amendment prohibition against cruel and unusual punishment—both facially and as applied to Harris. These arguments were not presented before the district court and are therefore reviewed only for plain error on appeal. *See United States v. Ming Hong*, 242 F.3d 528, 532 (4th Cir. 2001); *United States v. Maxton*, 940 F.2d 103, 105 (4th Cir. 1991). Under the plain error standard, this Court "will correct an unpreserved error if (1) an error was made; (2) the error is plain; (3) the error affects substantial rights; and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ramirez-Castillo*, 748 F.3d 205, 212 (4th Cir. 2014) (citing *Henderson v. United States*, 568 U.S. 266, 272 (2013)). "At a minimum, court[s] of appeals cannot correct an error pursuant to [plain error review] unless the error is clear under current law." *United States v. Olano*, 507 U.S. 725, 734 (1993).

Under current law, it is not clear that § 4B1.1's designation of career offenders based on convictions for crimes of violence or controlled substance offenses facially violates the Eighth Amendment. The Supreme Court has previously upheld enhanced punishments pursuant to recidivism statutes. *Ewing v. California*, 538 U.S. 11, 25 (2003) (affirming sentence under three strikes law which generated sentence of 25 years to life for theft of

golf clubs); *Rummel v. Estelle*, 445 U.S. 263, 285 (1980) (affirming life sentence for three convictions of theft and credit card and check fraud totaling less than $250). On the other hand, in *Solem v. Helm*, the Supreme Court held that life without parole for an individual who gave a bad check, based on his six nonviolent felony convictions, violated the Eighth Amendment. 463 U.S. 277, 280–81, 303 (1983).

It is not clear in this case that Harris's offense, sentence, and criminal history are more similar to the circumstances in *Solem* than in *Rummel*. Unlike the defendant in *Solem*, Harris has a prior conviction for a violent felony. Additionally, his sentence, while long, is significantly less severe than both the life sentence and the life sentence without parole imposed in *Rummel* and *Solem* respectively. While Harris's sentence is longer than his co-defendants, they were not career offenders and therefore were not similarly situated. Furthermore, the Supreme Court has held in no uncertain terms that a sentence of forty years for possession of nine ounces of marijuana and drug paraphernalia is not grossly disproportionate. *Hutto v. Davis*, 454 U.S. 370, 370 (1982) (reversing Fourth Circuit for concluding otherwise). While one might argue that contemporary standards for proportionate punishment of recidivism and of marijuana offenses may have evolved since the 1980s, Harris has neither made that argument nor presented evidence to that effect.

Accordingly, it is not clear that the career offender enhancement is grossly disproportionate, facially or as applied to Harris's criminal history. That is not to say that there is no colorable Eighth Amendment challenge if supported by an appropriately developed record or when reviewed under a standard less stringent than plain error review. In this case, however, we must reject Harris's Eighth Amendment argument.

17

\*     \*     \*

We therefore affirm the district court's sentence.

## III.

We now address whether the district court erred by refusing to restrict public access to Harris's sentencing memorandum, which contained private and personal details about Harris and his wife and child, as well as photographs. When deciding whether to seal or otherwise restrict access to judicial documents, courts must balance competing interests. On one hand, "the Supreme Court [has] recognized a common law right to inspect and copy judicial records and documents." *In re Knight Pub. Co.*, 743 F.2d 231, 235 (4th Cir. 1984). However, "[t]his right of access to court records is not absolute," and "[t]he trial court . . . may, in its discretion, seal documents if the public's right of access is outweighed by competing interests." *Id.* In making the decision, the court should consider less restrictive "alternatives to sealing [that] provide an adequate record for review" and should "state the reasons for its decision [with] specific findings." *See id.* We conclude that the district court should have allowed Harris to file his sentencing memorandum under seal and required him to file a publicly accessible version that is redacted to the extent that it identifies the defendant's family and the nature of his cooperation, if any, with law enforcement.

Courts have recognized that an interest in protecting the physical and psychological well-being of individuals related to the litigation, including family members and particularly minors, may justify restricting access. *See, e.g.*, *Globe Newspaper Co. v.*

18

*Superior Court for Norfolk Cty.*, 457 U.S. 596, 607 (1982) (holding that safeguarding well-being of minor is compelling and may justify closure of criminal trial from public access); *United States v. Cannon*, No. 14-00087, 2015 WL 3751781, at *3 n.3 (W.D.N.C. June 16, 2015) (redacting children's first names); *United States v. Fretz*, No. 02-67, 2012 WL 1655412, at *3 (E.D.N.C. May 10, 2012) (ordering filing of redacted version of document). Needless to say, as a general rule, the need to protect the well-being of a criminal defendant's family members (and the defendant himself) is even more elevated if judicial records suggest that the defendant may have cooperated with law enforcement.

Here, the district court appropriately decided not to restrict public access to the entire sentencing memorandum, as only select parts contained sensitive information. But the court erred by not granting the less restrictive remedy of allowing Harris to file a redacted version of the memorandum. The minor redaction here of the names of Harris's wife and child and their photographs would protect their privacy interests without undermining any of the public interest in access to the judicial process, as such information is not material to understanding Harris's case. Accordingly, Harris should have been allowed to submit his full sentencing memorandum to the court in aid of his defense, under seal, and he should have been required to submit a redacted version that is publicly accessible.

We therefore reverse the district court's denial of Harris's motion to seal his sentencing memorandum and remand for the filing of a redacted version of the memorandum for public records.

## IV.

For the reasons stated above, we must affirm Harris's sentence. We reverse and remand only for the limited purpose of sealing Harris's sentencing memorandum and requiring Harris to file a redacted version to protect the privacy and well-being of his family.

*AFFIRMED IN PART, REVERSED IN PART*
*AND REMANDED WITH INSTRUCTIONS*